# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34968

RANDY CALLIES, TRICIA CALLIES, )
CHRISTOPHER PLANINSHEK, DAWN )
PLANINSHEK, and HERON STREET )
PROPERTIES, LTD, LC, )
)
    Plaintiffs-Appellants, )
)
v. )
)
GEORGE P. O'NEAL, CHARTER )
BUILDERS, INC., an Idaho corporation, )
PHEASANT RUN, LLC; SHAKESPEARE )
CONDOMINIUMS, LLC; HAMPTON )
PLACE, LLC; SILVER OAKS, LLC; CBI- )
BVBI, LLC; FOXBORO, LLC; CRYSTAL )
BLUE, LLC; and CHARTER POINT )
APARTMENTS, LLC, )
)
    Defendants-Respondents. )
_____ )

Boise, June 2009 Term

2009 Opinion No. 93

Filed: July 7, 2009

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge.

The district court's summary judgment order is vacated and the case is remanded.

Strother Law Office, Boise, for appellants. Jeffrey A. Strother argued.

Angstman, Johnson & Associates, Boise, for respondents. Thomas J. Angstman argued.

_____

J. JONES, Justice

Tricia Callies and Complete Property Management, Inc. (collectively "CPM") filed a complaint against George O'Neal, Charter Builders, Inc., Charter Pointe Apartments, LLC, and Silver Oaks, LLC (collectively "CBI") seeking payment of real estate commissions allegedly earned pursuant to two listing agreements. The district court issued an order granting partial summary judgment in favor of CBI, holding the agreements were unenforceable because they did

1

not contain sufficient descriptions of the properties to be sold. CPM now appeals the district court's order. We vacate and remand.

**I.**

Callies, the owner of Complete Property Management, entered into two exclusive seller representation agreements with George O'Neal, the sole shareholder of Charter Builders, Inc. The listing agreements pertained to two development projects – Charter Pointe Apartments (Charter Pointe) and Silver Oaks.[1] At the time the listing agreements for the projects were executed, they did not contain legal descriptions of the properties to be sold. Instead, the agreements only indicated the general locations of the projects, including the counties, cities, and zip codes in which they were located.

The Charter Pointe agreement was executed on March 1, 2005 and was later extended on February 28, 2006. The agreement described the development as having "32 zero lot line 4 plexes," and identified the "property address and . . . complete legal description" of the project as follows:

| Address | | TBD Charter Pointe | | | |
|---|---|---|---|---|---|
| County | Ada | City | Boise | Zip | 83709 |
| Legal Description | | | | | |

or x Legal Description Attached as addendum #  1 . (Addendum must accompany original listing)

At the time the parties executed the agreement, it did not include an attached "addendum # 1."

Although a final legal description was not attached to the agreement, Callies stated in her affidavit that O'Neal had provided her with a preliminary plat of the project, which was placed "into both of our listing agreement files – mine by my staff and his by his own hand." According to Callies, the plat and a document containing the individual legal descriptions for the units were incorporated into the listing agreement prior to its renewal and extension on February 28, 2006.[2]

---

[1] Charter Builders, Inc. was the managing member and agent for the limited liability companies formed for both Charter Pointe and Silver Oaks.

[2] Callies does not specify how the incorporation of the legal descriptions was accomplished, either with respect to Charter Pointe or Silver Oaks. It is not clear whether the incorporation occurred through other means than placing the legal descriptions in the listing agreement files. CBI moved to strike Callies' affidavits but the record does not reflect the grounds upon which it relied. The district court did not rule on the motion to strike, concluding that "there is no need to resolve the evidentiary issues raised by [CBI]" because the motion for summary judgment presented "only questions of law." As it turns out, we conclude that the district court erred in determining the issues

The document containing the legal descriptions was not labeled as "addendum # 1," but it identified each individual unit in the development by reference to a plat and by its street address.

The Silver Oaks agreement was executed on March 7, 2005. The legal description of the property was not prepared until March 14, 2005. The agreement described the development as having 73 four plex buildings and identified the legal description of the property as follows:

Address                         TBD Ten Mile/Franklin
County       Ada     City     Boise     Zip   83709
Legal Description

or x Legal Description Attached as addendum # 1 . (Addendum must accompany original listing)

When the agreement was executed, it did not include an attached "addendum # 1."

One week after executing the Silver Oaks agreement, O'Neal provided Callies with a master plat and legal description of the property. According to Callies, the master plat "was put into both of our listing agreement files – mine by my staff and his by his own hand." She also stated that the legal description of the Silver Oaks property and individual unit descriptions were incorporated into the listing agreement before it was renewed and extended on February 28, 2006.

Despite the initial absence of attached property descriptions, the testimony presented below indicated both parties understood what properties were the subjects of the agreements. O'Neal testified:

> [O]n or about March 8, 2005 I executed the closing papers for the acquisition of the property *which is the subject matter of the above noted Representation Agreements*. . . . [O]n April 11, 2006 the Declaration of Covenants for Charter Pointe Village 4-Plex Condominiums was recorded . . . which [included] a legal description of record for the property *which is the subject matter of the above noted Representation Agreements*.

Callies testified that "[a]t the time of the execution of the Extension Agreement[s] there was no doubt between the parties as to the terms of the Listing Agreement[s'] legal description[s]." Neither party disputed there was a mutual understanding regarding the properties to which the listing agreements pertained.

---

of law. Thus, the factual issues become relevant and, without a determination of those issues by the trial court, we are not inclined to decide them.

The listing agreements for Charter Pointe and Silver Oaks were not the first such agreements between CPM and CBI. The parties had previously entered into several similar agreements for properties Callies brokered on behalf of CBI. In those agreements, the parties employed the same method of describing the properties to be sold. Specifically, the agreements listed the property addresses as "TBD" and indicated that legal descriptions of the properties were attached as "addendum # 1" – even when such descriptions were not available.

The parties continued operating under the Charter Pointe and Silver Oaks listing agreements for approximately eighteen months. During that time, Callies marketed the units in the developments, opened escrow accounts, brokered several purchase and sale agreements, and received earnest money deposits on behalf of CBI. Callies turned the earnest money checks over to O'Neal, who deposited the checks throughout the years of 2005 and 2006. Then, in May 2006, CBI began contesting the validity of the listing agreements. CBI maintained the listing agreements were invalid because they did not contain sufficient property descriptions and, therefore, it refused to pay CPM.

On November 8, 2006, CPM filed a complaint against CBI seeking to recover unpaid commissions for sales relating to the Charter Pointe and Silver Oaks developments. CPM claimed "between $235,900.00 and $421,800.00" in commissions for the Charter Pointe project and $546,600.00 for the Silver Oaks project. CBI filed an answer and counterclaim seeking a judgment declaring the listing agreements invalid, followed by a motion for partial summary judgment. Relying on Idaho Code sections 9-503, 9-508, and 54-2050, CBI argued that the listing agreements were invalid because they did not include legal descriptions of the properties to be sold and, thus, violated the statute of frauds. Accordingly, it sought dismissal of the claims for commissions due under the agreements.

On August 31, 2007, the district court granted CBI's motion for partial summary judgment. The court concluded the listing agreements were unenforceable because they did not comply with Idaho Code sections 9-503 and 54-2050. Relying on this Court's decision in *Lexington Heights Development, L.L.C. v. Crandlemire*, 140 Idaho 276, 92 P.3d 526 (2004), the court reasoned that the descriptions were insufficient since they did not identify the "quantity, identity, or boundaries" of the properties. In reaching this conclusion, the court rejected CPM's argument that this Court's decision in *Central Idaho Agency, Inc. v. Turner*, 92 Idaho 306, 442 P.2d 442 (1968), controlled the disposition of CBI's motion. The district court reasoned that the

4

Legislature overruled *Central Idaho Agency* when it enacted section 54-2050. In any event, the court concluded *Central Idaho Agency* was inapplicable because the agreement in that case contained a description of the property – the description was simply insufficient. The agreements between CPM and CBI, on the other hand, were – in the court's opinion – completely lacking descriptions of the properties to be sold.[3] Since there was "no street address, acreage designation, or any other adequate identification of the boundaries of the property to be conveyed," the court was unwilling to admit parol evidence to supply the terms of the agreements. Finally, the court rejected CPM's claims that the equitable doctrines of estoppel, quasi-estoppel, and part performance permitted enforcement of the agreements. According to the court, equitable principles were inapplicable because the agreements between the parties were incomplete and there was no evidence that CBI's conduct was unconscionable.

CPM now appeals the district court's order granting CBI's motion for partial summary judgment. CPM argues that the district court's order should be vacated and the case remanded for a trial on its breach of contract, part performance, and quasi-estoppel claims. It contends the court's order was erroneous because: (1) the court improperly relied on Idaho Code section 9-503 instead of section 9-508; (2) the agreements contained legally enforceable descriptions of the properties to be sold; (3) there were genuine issues of material fact that precluded summary judgment; and (4) it is entitled to the commissions under the doctrines of part performance and quasi-estoppel. In addition, CPM requests an award of attorney fees on appeal.

**II.**

On appeal we are presented with five issues: (1) whether the district court erred in relying on Idaho Code section 9-503 rather than section 9-508; (2) whether a genuine issue of material fact exists regarding the parties' intent to incorporate property descriptions into the listing agreements; (3) whether the agreements contained legally enforceable descriptions of the properties to be sold; (4) whether CPM is entitled to compensation based on the equitable principles of part performance and quasi-estoppel; and (5) whether either party is entitled to attorney fees on appeal.

---

[3] The court rejected CPM's argument that the subsequently attached descriptions were part of the agreements.

## A.

On appeal from an order granting a party's motion for summary judgment, this Court employs the same standard of review that the trial court uses in ruling on the motion. *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). Summary judgment is appropriate when the pleadings, affidavits, and discovery documents before the court indicate no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Idaho R. Civ. P. 56(c); *Baxter*, 135 Idaho at 170, 16 P.3d at 267. "In other words, the moving party is entitled to a judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial." *Baxter*, 135 Idaho at 170, 16 P.3d at 267. The moving party carries the burden of proving the absence of a genuine issue of material fact. *Id.*

In construing the record on a motion for summary judgment, all reasonable inferences and conclusions must be drawn in favor of the party opposing summary judgment. *Student Loan Fund of Idaho, Inc. v. Duerner*, 131 Idaho 45, 49, 951 P.2d 1272, 1276 (1997). All doubts are to be resolved against the moving party. *Collord v. Cooley*, 92 Idaho 789, 795, 451 P.2d 535, 541 (1969). The nonmoving party, however, "may not rest upon the mere allegations or denials of that party's pleadings, but the party's response, by affidavits or . . . otherwise . . . , must set forth specific facts showing that there is a genuine issue for trial." Idaho R. Civ. P. 56(e); *Baxter*, 135 Idaho at 170, 16 P.3d at 267. "A mere scintilla of evidence is not enough to create a genuine issue of fact." *Tingley v. Harrison*, 125 Idaho 86, 89, 867 P.2d 960, 963 (1994). The evidence offered in support of or in opposition to a motion for summary judgment must be admissible. *Bromley v. Garey*, 132 Idaho 807, 811, 979 P.2d 1165, 1169 (1999).

When questions of law are presented on a motion for summary judgment, "this Court exercises free review and is not bound by findings of the district court but is free to draw its own conclusions from the evidence presented." *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 366, 109 P.3d 1104, 1108 (2005). Thus, the Court independently reviews the trial court's resolution of "whether a genuine issue of material fact exists and whether the prevailing party was entitled to judgment as a matter of law." *Doe v. City of Elk River*, 144 Idaho 337, 338, 160 P.3d 1272, 1273 (2007). "If uncontroverted facts exist which lead to a definite disposition as a matter of law, summary judgment is appropriate." *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 524, 808 P.2d 851, 861 (1991).

**B.**

CPM contends the district court improperly relied on Idaho Code section 9-503 instead of section 9-508. It argues relying on section 9-503 was improper since that section establishes a statute of frauds for transfers of interests in real property. According to CPM, section 9-508 governs the disposition of its claims since that section deals specifically with commission agreements, which do not effect transfers of real property. Had the district court applied the appropriate statute, CPM argues the commission agreements would have been enforceable.

CBI contends the district court applied the appropriate standard for determining the sufficiency of the property descriptions. It argues that, pursuant to Idaho Code section 54-2050, commission agreements must contain property descriptions that satisfy section 9-503. According to CBI, by enacting Idaho Code section 54-2050, the Legislature overruled this Court's more lenient interpretation of the description requirement for commission agreements contained in section 9-508. Alternatively, CBI argues that even if section 9-508 controls, the trial court's reliance on section 9-503 was harmless error.

**1.**

The interpretation and application of a statute are pure questions of law over which this Court exercises free review. *Roeder Holdings, L.L.C. v. Bd. of Equalization of Ada County*, 136 Idaho 809, 812, 41 P.3d 237, 240 (2001), *abrogated on other grounds by Ada County Bd. of Equalization v. Highlands, Inc.,* 141 Idaho 202, 108 P.3d 349 (2005). When interpreting a legislative enactment, our primary objective is to derive the Legislature's intent in enacting the statute. *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 307, 312, 109 P.3d 161, 166 (2005). Thus, statutory interpretation begins with the literal language of the statute. *Id*. If the statutory language is unambiguous, we need not engage in statutory construction and are free to apply the statute's plain meaning. *Id*. On the other hand, if the statutory language is ambiguous, we must examine the proffered interpretations "and consider the 'context in which [the] language is used, the evils to be remedied and the objects in view.'" *Id*. (quoting *Ada County v. Gibson,* 126 Idaho 854, 857, 893 P.2d 801, 804 (Ct. App. 1995)). A statute will only be regarded as ambiguous when reasonable minds might differ as to its interpretation. *Id*.

In enacting legislation, the Legislature is deemed to have full knowledge of existing judicial decisions. *C. Forsman Real Estate Co. v. Hatch*, 97 Idaho 511, 515, 547 P.2d 1116, 1120 (1976). As such, when interpreting a statute, this Court presumes the Legislature did not

intend to change the common law unless the language of the statute clearly indicates otherwise. *Thomson v. City of Lewiston*, 137 Idaho 473, 478, 50 P.3d 488, 493 (2002). Generally, this same rule applies in determining whether the Legislature intended to repeal an existing statute. *See State v. Davidson*, 78 Idaho 553, 559, 309 P.2d 211, 215 (1957). In some instances, however, the Legislature may repeal a statute by implication. *See State v. Roderick*, 85 Idaho 80, 83-84, 375 P.2d 1005, 1006-07 (1962). Repeal by implication occurs when "two statutes are inconsistent and irreconcilable." *Id*. at 83, 375 P.2d at 1006. Courts disfavor repeal by implication and, therefore, attempt to interpret seemingly conflicting statutes in a manner that gives effect to both provisions. *Id*. at 84, 375 P.2d at 1007; *Davidson*, 78 Idaho at 559, 309 P.2d at 215. "Where two statutes, governing the same subject, can be reconciled and construed so as to give effect to both, no repeal occurs, and it is the duty of the courts to so construe them." *Roderick*, 85 Idaho at 84, 375 P.2d at 1007.

**2.**

Under Idaho's statute of frauds pertaining to transfers of real property,[4] agreements for the sale of such property must be in writing and subscribed by the party to be charged. I.C. § 9-503; *Lexington Heights Dev., L.L.C. v. Crandlemire*, 140 Idaho 276, 281, 92 P.3d 526, 531 (2004). The writing must contain all "conditions, terms[] and descriptions necessary to constitute the contract," including a description of the property to be sold. *Lexington Heights*, 140 Idaho at 280, 92 P.3d at 530 (quoting *Allen v. Kitchen*, 16 Idaho 133, 141, 100 P. 1052, 1055 (1909)). The property description must be specific enough, either by its own terms or by reference,[5] to ascertain the quantity, identity, or boundaries of the property without resorting to parol evidence. *Id*. at 281, 92 P.3d at 531. In other words, the description "must adequately describe the property so that it is possible for someone to identify 'exactly' what property the

---

[4] That statute provides:

> No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

I.C. § 9-503.

[5] A written agreement that refers to "'any record or external or extrinsic description from which a complete description could be had' sufficiently describes the real property for purposes of the statute of frauds." *Ray v. Frasure*, 146 Idaho 625, 629, 200 P.3d 1174, 1178 (2009) (quoting *Allen*, 16 Idaho at 143, 100 P. at 1055).

seller is conveying to the buyer." *Ray v. Frasure*, 146 Idaho 625, 629, 200 P.3d 1174, 1178 (2009); *see also White v. Rehn*, 103 Idaho 1, 3, 644 P.2d 323, 325 (1982). Parol evidence may only be relied on "for the purpose of identifying the land described and applying the description to the property." *Lexington Heights*, 140 Idaho at 281, 92 P.3d at 531 (quoting *Allen*, 16 Idaho at 144, 100 P. at 1056). It may not be used "for the purpose of ascertaining and locating the land about which the parties negotiated" or for "supplying and adding to a description insufficient and void on its face." *Id.* (quoting *Craig v. Zelian*, 69 P. 853, 853 (Cal. 1902)); *Allen*, 16 Idaho at 144, 100 P. at 1056. Consequently, under the statute of frauds, "the issue is not whether the parties had reached an agreement. The issue is whether that agreement is adequately reflected in their written memorandum." *Lexington Heights*, 140 Idaho at 282, 92 P.3d at 532. Agreements for the sale of real property that do not "comply with the statute of frauds are unenforceable both in an action at law for damages and in a suit in equity for specific performance." *Ray*, 146 Idaho at 628, 200 P.3d at 1177.

Another provision of the statute of frauds requires that brokerage representation agreements pertaining to the sale of real property be in writing. I.C. § 9-508. That section provides:

> No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one person of a purchaser of real estate of another shall be valid unless the same shall be in writing, signed by the owner of such real estate, or his legal, appointed and duly qualified representative.

I.C. § 9-508. This Court has consistently interpreted Idaho Code section 9-508 to require that real estate brokerage agreements contain a written description of the property to be sold. *See, e.g., Murphy v. Livesay*, 34 Idaho 793, 796, 197 P. 536, 536 (1921), *overruled on other grounds by Central Idaho Agency, Inc. v. Turner*, 92 Idaho 306, 442 P.2d 442 (1968). When a brokerage agreement fails to meet the requirements of section 9-508, a broker is generally not entitled to recovery.[6] *See Century 21 Quality Props., Inc. v. Chandler*, 103 Idaho 193, 196, 646 P.2d 435,

---

[6] Recovery may, however, be permitted under exceptional circumstances. *See Century 21 Quality Props., Inc. v. Chandler*, 103 Idaho 193, 196, 646 P.2d 435, 438 (Ct. App. 1982). For example, recovery may be possible when the purchase agreement between the buyer and seller contains a provision acknowledging an obligation to pay the broker's commission. *See Isaguirre v. Echevarria*, 96 Idaho 641, 645-46, 534 P.2d 471, 475-76 (1975); *Homefinders v. Lawrence*, 80 Idaho 543, 548-49, 335 P.2d 893, 896-97 (1959). *But see Robertson v. Hansen*, 89 Idaho 107, 111, 403 P.2d 585, 587 (1965).

438 (Ct. App. 1982). In addition, Idaho's Real Estate License Law requires seller representation agreements be in writing. I.C. § 54-2050(1). To comply with the law, written seller representation agreements must include, among other things, "[a] legally enforceable description of the property." I.C. § 54-2050(1)(b).

In this Court's earlier decisions, we held that to satisfy the writing requirement contained in section 9-508, a commission agreement had to include a property description "no less certain in its terms than would be required under any other phase of the statute of frauds." *Murphy*, 34 Idaho at 796, 197 P. at 536. In other words, the description had to "meet the essentials in an action for specific performance" and be "complete within itself." *Id.*; *Laker Land & Loans v. Nye*, 40 Idaho 793, 796, 237 P. 630, 631 (1925), *overruled by Central Idaho Agency, Inc. v. Turner*, 92 Idaho 306, 442 P.2d 442 (1968); *Robison v. Frasier*, 89 Idaho 326, 332-33, 404 P.2d 877, 880-81 (1965), *abrogated by Central Idaho Agency, Inc. v. Turner*, 92 Idaho 306, 442 P.2d 442 (1968). Parol evidence could only be referred to "for the purpose of applying the description contained in [the] writing to a definite piece of property[,] and to ascertain its location on the ground." *Murphy*, 34 Idaho at 796, 197 P. at 536 (quoting *Cushing v. Monarch Timber Co.*, 135 P. 660, 663 (Wash. 1913)).

This Court adhered to the interpretation of section 9-508 announced in *Murphy* until 1968, when we rendered our decision in *Central Idaho Agency, Inc. v. Turner*, 92 Idaho 306, 442 P.2d 442 (1968). In that case, the Court abandoned the *Murphy* interpretation in favor of a more lenient standard. Specifically, we held that, for purposes of real estate brokerage agreements, a property description "is sufficient where it is shown that there is no misunderstanding between the property owner and the broker as to the property to be offered for sale." *Central Idaho Agency,* 92 Idaho at 311, 442 P.2d at 447. So long as the description "enable[s] the broker to locate the property, show it, and point out its boundaries to the prospective purchaser," it meets the requirements of the statute. *Id.*; *see also Shields & Co. v. Green*, 100 Idaho 879, 882, 606 P.2d 983, 986 (1980); 12 C.J.S. *Brokers* § 182 (2009). In addition, parol evidence may be used to identify the property that is the subject of the agreement, provided it does not vary, add to, or subtract from the agreement the parties intended to make. *Central Idaho Agency*, 92 Idaho at 311, 442 P.2d at 447. As stated by the Court:

> The applicable rule as variously stated . . . is that the listing agreement must, inter alia, identify the real property adequately as between the broker and the vendor. If it is thus sufficient to identify the property, although defective, ambiguous, or

uncertain, it may be supplemented by parol or extrinsic evidence. Such evidence may be presented, not to create a description, but to cure a defective one otherwise sufficient. When that is done it will be held in compliance with the statute, I.C. § 9-508.

*Id.*

In reaching our decision in *Central Idaho Agency*, we reasoned it would be illogical to apply the rule governing actions for specific performance of contracts for the sale of real property to actions to enforce brokerage contracts. *Id.* Unlike a real estate sale agreement, a brokerage agreement is "not a contract to sell, convey, or encumber real property or any interest therein" and, therefore, does "not support an action to compel conveyance of the property involved." *Id.* Instead, a brokerage agreement is akin to an employment contract "for services to be performed by the broker for a commission to be paid upon the occurrence of certain specified events." *Id.* Based on these distinctions, a more lenient property description standard for brokerage agreements was justified.

Over thirty years after our decision in *Central Idaho Agency*, the Legislature enacted Idaho Code section 54-2050. As mentioned above, the statute explicitly requires real estate brokerage agreements to contain "[a] legally enforceable description of the property" to be sold. I.C. § 54-2050(1)(b). According to CBI, by enacting section 54-2050, the Legislature overruled *Central Idaho Agency*. For the following reasons, CBI's argument is unpersuasive.

From 1968 until the enactment of section 54-2050 in 2000, this Court consistently held that a legally enforceable property description, for purposes of a real estate brokerage contract, need not be as specific as a property description contained in a real estate sale agreement. *See Hatch*, 97 Idaho at 516, 547 P.2d at 1121; *Shields & Co.*, 100 Idaho at 882, 606 P.2d at 986; *Central Idaho Agency,* 92 Idaho at 311, 442 P.2d at 447. Thus, at the time it enacted section 54-2050, the Legislature was presumably aware of what constituted a legally enforceable property description in the context of real estate brokerage agreements. By requiring seller brokerage agreements to contain a "legally enforceable" property description, section 54-2050 simply codified this Court's interpretation of section 9-508 as set forth in *Central Idaho Agency*. Had the Legislature intended to overrule our interpretation of the description requirement and impose a stricter standard, it could have enacted a provision expressly requiring property descriptions in brokerage agreements to comply with Idaho Code section 9-503 or be sufficient to support an action for specific performance. In declining to do so, the Legislature left our holding in *Central*

*Idaho Agency* intact. We will not presume the Legislature intended section 54-2050 to overrule over thirty years of precedent when it did not expressly indicate an intention to do so. Such a presumption would contravene our well-established principles of statutory interpretation.

Although, on one occasion, we deviated from our holding in *Central Idaho Agency*, that decision was rendered after the enactment of section 54-2050. In *Garner v. Bartschi*, 139 Idaho 430, 80 P.3d 1031 (2003), the Court, relying on Idaho Code sections 9-503 and 54-2050, held a seller representation agreement invalid because it did not contain an adequate description of the property to be sold. *Garner*, 139 Idaho at 436, 80 P.3d at 1037. The agreement identified the property as "4565 Nounan Road, *County* Bear Lake, *City* Nounan, *Zip* 83254, *Legal description* approx. 500 acres mountain property." *Id*. We reasoned the foregoing description was insufficient because it contained "only the home address of the [sellers] and the approximate acreage being sold." *Id*. While we acknowledged "[t]here was no apparent misunderstanding between [the parties] as to which property was being sold," we ultimately concluded the description was insufficient. *Id*. In reaching our conclusion, we did not rely on *Central Idaho Agency* or section 9-508.

*Garner* did not change the standard governing the sufficiency of property descriptions contained in real estate brokerage agreements. Nowhere in the decision did we purport to overrule the over thirty years of precedent based on *Central Idaho Agency*. Although we relied on the standard set forth in Idaho Code section 9-503 in reaching our decision, the applicability of section 9-508 was not raised before the Court. The plaintiff-appellant in *Garner* did not assert section 9-508 was the controlling statute or even cite the provision in its briefs. Instead, it relied on sections 9-503 and 54-2050. Because we were not asked in *Garner* to determine whether section 9-508 and *Central Idaho Agency* remained applicable after the enactment of section 54-2050, our decision not to rely on those authorities is not binding. *See Fuller v. Wolters*, 119 Idaho 415, 425, 807 P.2d 633, 643 (1991) (holding that a previous decision assuming a malpractice action was a commercial transaction for the purpose of awarding attorney fees was not binding because the Court in that case was "not asked . . . to decide whether a malpractice action involving a commercial transaction falls within the parameters of [the statute]"), *overruled on other grounds by Blimka v. My Web Wholesaler, L.L.C.*, 143 Idaho 723, 152 P.3d 594 (2007). It is not the responsibility of this Court to rescue counsel from their inadequate arguments. The standard governing property descriptions in real estate brokerage agreements is clearly contained

12

in section 9-508, which deals specifically with the validity of such agreements. As such, our holding in *Central Idaho Agency* continues to control. *Garner* was simply an aberration in our well-established line of precedent holding that a legally enforceable property description under section 9-508 is not the same as a legally enforceable description under section 9-503.

Moreover, section 54-2050 did not repeal section 9-508 by implication. Section 54-2050 and section 9-508 are not inconsistent or irreconcilable. Both sections require real estate brokerage agreements to contain written descriptions of the property to be sold. By requiring brokerage agreements to contain "legally enforceable" property descriptions, section 54-2050 effectively incorporated the description requirement imposed by section 9-508, as interpreted by this Court in *Central Idaho Agency*. Such a construction is in accord with our duty to reconcile and give effect to both statutes if at all possible. A conclusion that section 54-2050 repealed section 9-508 by implication, on the other hand, would contravene principles of statutory interpretation.[7]

For the foregoing reasons, the trial court erred in relying on section 9-503 to determine whether the commission agreements contained adequate property descriptions.[8] Given the more stringent description requirement imposed by section 9-503, the trial court's reliance on that

---

[7] Still, CBI argues that section 9-508 is inapplicable because "when there are specific statutes addressing an issue, those statutes control over more general statutes." *City of Sandpoint v. Sandpoint Indep. Highway Dist*., 126 Idaho 145, 149, 879 P.2d 1078, 1082 (1994). This principle, however, is inapplicable since section 9-508 and section 54-2050 address two different issues – the former the enforceability of commission agreements and the latter the standards of professional conduct for real estate brokers. Section 9-508 specifically sets forth the requirements of a "valid" commission agreement. I.C. § 9-508. Section 54-2050, on the other hand, was enacted as part of the Idaho Real Estate License Law, which governs the professional conduct and dealings of real estate brokers and salespersons. *See* I.C. §§ 54-2001 to -2080. Section 54-2050 only indicates that brokerage agreements "must" include a legally enforceable property description. I.C. § 54-2050(1)(b). Violations of the statute are considered professional misconduct and may result in discipline and civil penalties. *See* I.C. §§ 54-2059 & 54-2060(10). By its own terms, the statute does not purport to govern the validity of commission agreements. Rather, it establishes a professional standard that brokers must comply with to avoid discipline. As such, CBI's argument is unpersuasive.

[8] The district court also erred in concluding that the legal descriptions were required to be physically attached to the listing agreements at the time they were signed. This Court has not imposed such a rigid requirement in the past and finds no need to do so here. *See Garfield v. Tindall*, 98 Idaho 841, 844, 573 P.2d 966, 969 (1978) (holding that the map a seller supplied to a broker "at the time the brokerage contract was signed was intended by the parties to constitute the legal description in the brokerage contract"); *Russell v. Russell*, 99 Idaho 151, 154, 578 P.2d 1082, 1085 (1978) (holding that the earnest money agreement indicating a "full legal" property description was attached to agreement incorporated property description by reference where the description "was always with the earnest money agreement" and "[t]he broker testified that the legal description was kept side by side with the earnest money agreement in the broker's files").

13

section instead of section 9-508 was not harmless error as CBI suggests. Although vague, the listing agreements contained general descriptions of the properties to be sold, including the names of the projects and the cities, counties, and zip codes in which they were located. They also indicated the number of units included in each project. The record indicates the descriptions were adequate to identify the properties between Callies and CBI. O'Neal clearly identified the properties at issue by providing Callies with descriptions and plats of the properties and testifying that he knew what properties were the subjects of the listing agreements. His counsel's briefing before this Court confirmed his understanding of the identities of the subject properties. Callies also testified that both parties understood what properties were to be sold. Because the descriptions were sufficient to identify the properties between the broker and seller, extrinsic evidence could have been admitted to cure the defective descriptions. Thus, CBI's motion for summary judgment should have been denied. *See Shields & Co.*, 100 Idaho at 882-83, 606 P.2d at 986-87 (holding that it was up to the jury to decide whether the broker and seller understood the property to be sold where the listing agreement erroneously indicated a property description was attached, but the seller testified the broker knew what property was to be sold). Given our disposition of this issue, we need not address the additional arguments raised on appeal.

## III.

The district court's order granting CBI's motion for partial summary judgment is vacated and the case remanded. Fees and costs, including those incurred on appeal, may be awarded to the party who prevails on remand.

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and HORTON CONCUR.

14