# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 44735

BAERBEL LITKE, surviving spouse and
successor in interest for Klaus Kummerling,
and the marital community composed thereof,

Plaintiff-Respondent,

v.

MARK MUNKHOFF and ROBYN
MUNKHOFF, husband and wife, and the
marital community composed thereof,

     Defendants-Appellants,

and

CITY OF COEUR D'ALENE, IDAHO, a
political subdivision of the State of Idaho,
COEUR D'ALENE IDAHO POLICE CHIEF
RON CLARK; and SAM MUNKHOFF, a
single person,

     Defendants.

Moscow, April 2018 Term

2018 Opinion No. 44

Filed: April 27, 2018

Karel A. Lehrman, Clerk

Appeal from the District Court of the First Judicial District, State
of Idaho, Kootenai County.  Hon. Cynthia K. C. Meyer, District Judge.

The judgment of the district court is <u>affirmed</u>.  Costs on appeal are
<u>awarded</u> to respondent.

Winston & Cashatt, Spokane, for Appellants. Collette C. Leland argued.

Powell, Kuznetz & Parker, PS, Spokane, for Respondent. Michael Parker argued.

_____

BEVAN, Justice

Mark and Robyn Munkhoff (the "Munkhoffs") appeal the district court's denial of their

motions for summary judgment and a new trial or remittitur under Idaho Code section 6-807 and

Idaho Rules of Civil Procedure 59, 59.1, and 60. We affirm the district court's judgment.

1

# I. FACTS AND PROCEDURE

On November 26, Animal Control Officer Laurie Deus responded to a report of a vicious dog. When she arrived on scene, Officer Deus observed a black and white pit bull, later identified as "Bo," aggressively charging at anyone who got near him. Bo was so aggressive that Officer Deus had to call in a second officer to help capture him. Bo was declared aggressive by Officer Deus the same day. The two officers were finally forced to use a Taser on Bo to subdue and control him. The following day the Munkhoffs' son Sam Munkhoff ("Sam") called Animal Control to report Bo missing. Over the phone, Officer Deus informed Sam that she was declaring Bo aggressive, that Sam must follow the provisions contained in Coeur d'Alene City Ordinance 6.20.030, and that Sam must sign the declaration form which explained the requirements for keeping and controlling an aggressive dog before he could claim him.

Sam told Officer Deus that Bo would be better controlled at the Munkhoffs' home than at his apartment. Officer Deus met Sam at the Munkhoffs' home and determined the fence met the specifications contained in Ordinance 6.20.030. Under this ordinance, Officer Deus also informed Sam that signs must be posted warning the public to "Beware of Dog," and if Bo left the enclosed yard he needed to be muzzled. Sam was given a written copy of Ordinance 6.20.030 and signed the declaration form. Before Officer Deus left, Mark Munkhoff ("Mark") arrived. Because Bo was expected to stay with the Munkhoffs Officer Deus explained to Mark the requirements for keeping and controlling an aggressive dog and asked if he was willing to contain Bo according to Ordinance 6.20.030. Mark verbally agreed to follow the requirements as Officer Deus explained them to him.

On April 30, 2013, Officer Deus received a report of a dog bite that occurred on April 29, 2013, near the Munkhoffs' home. Animal Control Officer Gilbertson responded to the call. The owner of the dog was identified as Sam. Sam was cited for having an animal running at large, an animal attacking, biting or chasing, and Bo was declared dangerous. Officer Gilbertson cited Mark as well, whose dog Dexter was also running at large. At the same time, Officer Gilbertson told Mark that he was declaring Bo dangerous. Mark told Officer Gilbertson that "Sam is absolutely not allowed to move back in nor is he allowed to bring Bo back even for a visit." Officer Deus, who was trying to locate Sam and Bo, followed up with Mark the next day to have either Sam or Mark sign the form declaring Bo dangerous. Officer Deus could not reach Sam, but she spoke with Mark on the phone. Mark stated that "if that dog shows up [I] will shoot it."

2

In the weeks before Bo bit Klaus Kummerling[1] ("Kummerling"), Sam took a job in North Dakota. Sam left Bo at the Munkhoffs' home beginning on July 5, 2013. Kummerling, his wife Baerbel Litke (the "Kummerlings"), and the Munkhoffs are neighbors, whose properly line is separated by a wooden fence. Kummerling had often seen Bo in the Munkhoffs' backyard prior to the incident, and Bo would frequently bark at Kummerling and charge the fence in an aggressive manner whenever Kummerling was working in his yard. On July 25, 2013, Sam returned from North Dakota for a visit and was staying with the Munkhoffs. That afternoon Sam took Bo for a walk. Bo was not muzzled as required under Coeur d'Alene City Ordinance 6.20.030. When Sam and Bo walked past the Kummerlings' driveway, Kummerling asked Sam if it was "okay to pet the dog." Kummerling stated that if he could make friends with Bo, then maybe Bo would stop charging at the fence. Sam, who was holding Bo's leash, gave Kummerling permission to pet the dog. When Kummerling bent down and reached out to pet him, Bo lunged at him, knocked him to the ground, and bit his face. Kummerling's lower lip and chin were partially torn from his face, and a segment of his face was torn away completely.

On July 29, 2015, the Kummerlings filed a complaint, alleging claims for negligence, gross negligence, outrage, and nuisance against the City of Coeur d'Alene, Coeur d'Alene Police Chief Ron Clark, the Munkhoffs, and Sam. The Kummerlings did not allege in their complaint that the Munkhoffs were vicariously liable for Sam's conduct. The district court dismissed the claims against the City and Chief Clark. The Munkhoffs filed a motion for summary judgment on March 17, 2016. The district court granted the Munkhoffs' motion as to all claims except the claim for negligence. Sam, who represented himself, did not join in the Munkhoffs' summary judgment motion.

On September 19-22, 2016, this case was tried to a jury. The jury returned a special verdict, finding that the Munkhoffs and their son Sam were negligent, negligent per se, and that their negligence was the actual and proximate cause of Kummerling's injuries. The jury allocated fault and calculated damages. Kummerling was awarded $16,603.00 in economic damages and $185,000.00 in non-economic damages. The Munkhoffs moved for a new trial pursuant to Idaho Rules of Civil Procedure 59(a)(1)(A), (F), and (G), for remittitur pursuant to Idaho Code section 6-807 and Rule 59.1, and for relief from judgment pursuant to Rule 60(b)(3). The district court

---

[1] Klaus Kummerling passed away while this appeal was pending. His wife, Baerbel Litke was then substituted as the proper party in interest by Order of this Court.

denied the motions, and a judgment was entered on November 7, 2016. On December 14, 2016, the Munkhoffs timely filed a notice of appeal.

## II. STANDARD OF REVIEW

When this Court reviews the district court's ruling on a motion for summary judgment, it employs the same standard as the district court's original ruling on the motion. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). In a motion for summary judgment, the moving party bears the burden of proving the absence of a material fact. *Sadid v. Idaho State University*, 151 Idaho 932, 938, 265 P.3d 1144, 1150 (2011) (citation omitted). "When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." *Liberty Bankers Life Ins. Co. v. Witherspoon, Kelley, Davenport & Toole, P.S.*, 159 Idaho 679, 685, 365 P.3d 1033, 1040 (2016). Although circumstantial evidence can create a genuine issue for trial, a mere scintilla of evidence is insufficient to demonstrate the existence of a genuine issue of material fact. *Callies v. O'Neal*, 147 Idaho 841, 846, 216 P.3d 130, 165 (2009) (citation omitted). This Court reviews "only that portion of the record which was before the trial court at the time the summary judgment motion was presented." *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 833, 801 P.2d 37, 40 (1990). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Lapham v. Stewart*, 137 Idaho 582, 585, 51 P.3d 396, 399 (2002) (citation omitted).

The standard of review applicable to a district court's decision to grant or deny a new trial under Idaho Rule of Civil Procedure 59(a) is abuse of discretion. *Burggraf v. Chaffin*, 121 Idaho 171, 173, 823 P.2d 775, 777 (1991). "The decision by a trial court to grant or deny a motion for a new trial rests within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of a clear and manifest abuse of discretion." *Barnett v. Eagle Helicopters, Inc.*, 123 Idaho 361, 363, 848 P.2d 419, 421 (1992) (citation omitted). When a district court's discretionary decision is reviewed on appeal, "this Court considers: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise

4

of reason." *Rockefeller v. Grabow*, 139 Idaho 538, 545, 82 P.3d 450, 457 (2003) (citation omitted).

## III. ANALYSIS

**A.    This Court will not address whether the district court erred when it denied the Munkhoffs' motion for summary judgment.**

In their motion for summary judgment, the Munkhoffs argued that, as a matter of law, they had no affirmative duty to prevent Kummerling's injuries because they were not in control of Bo at the time of the incident. Furthermore, while the Munkhoffs conceded that it might have been foreseeable Bo could cause harm while on their property, they asserted that the district court did not examine whether or not the Munkhoffs were Bo's custodians at the time of the incident. As a result, the Munkhoffs maintained the district court imposed upon them expanded duties of care when it found they had a duty to prevent an injury from occurring away from their property. Finally, the Munkhoffs asserted that even if a genuine issue of material fact existed that they had a duty and somehow breached that duty, there was no causal connection between the alleged breach and Kummerling's injuries. The Munkhoffs made this assertion because Sam's act of walking Bo without a muzzle was a superseding cause. The trial court denied the motion and Munkhoffs claim error in that decision as their first issue on appeal. We will not review the denial of the Munkhoffs' motion for summary judgment.

"An order denying summary judgment is neither a final order that can be directly appealed, nor is it an order that can be reviewed on an appeal from a final judgment in the action." *Bach v. Bagley*, 148 Idaho 784, 795–96, 229 P.3d 1146, 1157–58 (2010) (quoting *Courtney v. Big O Tires, Inc.*, 139 Idaho 821, 823, 87 P.3d 930, 932 (2003)). While the issue was not raised by either party on appeal, this Court has recognized two exceptions to the general rule that a denial of summary judgment is non-appealable and non-reviewable. "A denial of summary judgment by a district judge is not appealable unless the district judge was acting as an appellate court or unless [this Court] grant[s] permission to appeal." *North Pac. Ins. Co. v. Mai*, 130 Idaho 251, 252, 939 P.2d 580, 571 (1997) (citing I.A.R. 11(a)(1) and 12; *Bluestone v. Mathewson*, 103 Idaho 453, 454, 649 P.2d 1209, 1210 (1982)).

Here, the district court was not acting in any sort of appellate capacity when it denied the Munkhoffs' motion for summary judgment. Further, the first time the Munkhoffs sought this Court's permission to appeal the district court's denial of their motion for summary judgment

pursuant to Idaho Appellate Rule 12 was during Appellant's oral argument. Rule 12 states in pertinent part:

> (a) Criteria for permission to appeal. Permission may be granted by the Supreme Court to appeal from an interlocutory order or judgment of a district court in a civil or criminal action, or from the interlocutory order of an administrative agency, which is not otherwise appealable under these rules, but which involves a controlling question of law as to which there is substantial grounds for difference of opinion and in which an immediate appeal from the order or decree may materially advance the orderly resolution of the litigation.

I.A.R. 12. Under Rule 12, permissive appeals are only accepted in the most exceptional cases, with the intent to resolve substantial legal issues of great public interest or legal questions of first impression. *Hall v. State*, 155 Idaho 610, 620, 315 P.3d 798, 808 (2013). Therefore, the district court's denial of the Munkhoffs' motion for summary judgment is non-reviewable for three reasons: (1) the Munkhoffs failed to timely request permission to appeal; (2) the Munkhoffs' appeal does not contain an issue of great public interest or a question of first impression; and (3) the Munkhoffs' appeal does not involve purely an issue of law.

First, Idaho Appellate Rule 12(b) requires that a party seeking permission to appeal an interlocutory order must file a motion with the district court within fourteen days of the entry of the judgment. Here, the Munkhoffs failed to file a motion as required within the specified time. Instead, they asked this Court to consider their untimely appeal at oral argument. Second, this case does not present a question of first impression of law in Idaho. The Munkhoffs cite numerous Idaho cases analyzing the issue of the exercise of ordinary care for the custodian or owner of an aggressive or dangerous dog. Finally, this appeal does not involve purely a question of law with regard to causation because causation is generally a question of fact for the jury. *Fragnella v. Petrovich*, 153 Idaho 266, 272, 281 P.3d 103, 109 (2012).

Because the district court was not acting in an appellate capacity and because the Munkhoffs did not seek permission to appeal the interlocutory order under Idaho Appellate Rule 12 before they appeared before this Court at oral argument, no exception to the general rule that a denial of summary judgment is non-appealable and non-reviewable applies in this case. Therefore, we decline to review the questions presented in the denial of summary judgment.

**B. The Munkhoffs' motion for a new trial or remittitur was properly denied.**

6

The Munkhoffs appeal the district court's decision to deny their motion for new trial or remittitur on four legal bases: (1) the excessive award was given under the influence of passion or prejudice pursuant to Rule 59(a)(1)(F); (2) the record lacks sufficient evidence to support the verdict pursuant to Rule 59(a)(1)(G); (3) the necessity of remittitur in lieu of a new trial pursuant to Idaho Code section 6-807 and Rule 59(a)(1); and (4) justice requires relief from judgment pursuant to Rule 60(b). We disagree.

1. The jury's damages award was supported by substantial and competent evidence.

"A new trial is warranted where the jury's determination of damages appears to have resulted from passion or prejudice." *Kuhn v. Coldwell Banker Landmark, Inc.*, 150 Idaho 240, 248, 245 P.3d 992, 1000 (2010). To determine whether damages are excessive or inadequate, the district court must "weigh the evidence and compare the jury award with the award that it would have imposed." *Id.* "If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not to stand." *Quick v. Crane*, 111 Idaho 759, 768, 727 P.2d 1187, 1196 (1986). "[R]espect for the collective wisdom of the jury and the function entrusted to it under our constitution suggests the trial judge should, in most cases, accept the jury's findings even though [s]he may have doubts about some of their conclusions." *Id.*

> [S]ince it is a jury function to set the damage award based on its sense of fairness and justice, the trial judge must defer to the jury, *unless* it is apparent to the trial judge that there is a great disparity between the two damage awards and that disparity cannot be explained away as simply the product of two separate entities valuing the proof of the plaintiff's injuries in two equally fair ways.

*Id.* at 769, 727 P.2d at 1197 (emphasis in original). Finally, the court is not required to state the dollar amount it would have awarded, but must weigh the evidence and determine the disparity between what it would have awarded and the jury's award. *Pratton v. Gage*, 122 Idaho, 848, 852, 840 P.2d 392, 397 (1992).

The Munkhoffs claim that because the non-economic damages award is eleven and a half times the economic damages award this Court should find it so excessive as to shock the conscience, or, alternatively, that it was the product of passion or prejudice. We disagree. Here, as required, the district court assessed and weighed the credibility of the evidence. *See Collins v. Jones*, 131 Idaho 556, 558, 961 P.2d 647, 649 (1998). The district court performed this exercise as required.

7

The court found Kummerling was a credible witness. The district court also found Kummerling's wife, Baerbel Litke, to be credible. On the other hand, the court found Sam lacked credibility for two reasons. First, Sam admitted that he lied to Animal Control to claim ownership of Bo at the time of the November 2012 incident when Bo had to be tasered. Second, Sam admitted he lied to Animal Control when he said that he had moved out of state. Sam testified at trial that Bo was actually owned by his roommate, and that he misrepresented to Animal Control that he owned Bo so that he could retrieve him from the shelter. After Bo was declared aggressive, Sam also testified that he misrepresented to Animal Control that he moved to Southern California and had taken Bo with him, even though he had not moved from Coeur d'Alene and had no intention of moving.

The district court also found that the Munkhoffs lacked credibility. First, the district court did not believe Robyn's testimony when she said she did not know Bo had dangerous propensities or that he had several encounters with Animal Control. Likewise, the district court did not believe that Mark was ignorant of the City Ordinances for harboring an aggressive or dangerous dog. On direct examination, Mark insisted that he was not given formal documentation outlining the requirements under Ordinances 6.20.030 and 6.20.040. Although he did not receive written notice, he did admit that Officer Deus explained the requirements to him. Additionally, Mark stated he did not know that Bo had been declared dangerous. In light of the evidence adduced at trial, the district court did not find Mark's testimony to be particularly persuasive.

Moreover, the district court determined that the Munkhoffs lacked credibility when they testified that they had no control or influence over Sam while he and Bo were staying at the Munkhoffs' home. When the dog bite occurred, Sam was twenty years old, he was staying at the Munkhoffs' home when he was not working in North Dakota, and the Munkhoffs were taking care of Bo while Sam was away. Furthermore, Office Deus testified that in November 2012 she had gone over the requirements for harboring an aggressive dog with Mark after she had gone over them with Sam. Based upon the testimony and evidence in the record, the district court found the Munkhoffs had more knowledge, influence, and control over Sam and Bo than they claimed.

Furthermore, the district court did not find the Munkhoff family's claims that Bo was gentle and loving to be very credible. Robyn in particular testified that Bo was "very kind and

8

loving. He was sweet to our dogs. He was sweet. We had kids come over, I had friends come over, and he was nothing but sweet, tail wagging. He did nothing wrong." Sam also testified that many people had asked him if they could pet Bo, including kids. In fact, Sam explained he had a routine that he would follow to calm Bo down before anyone was allowed to pet him. Sam stated he would "get him settled," "get him to sit down" and "when [Sam] felt [it] was safe" he would let people approach Bo. Sam testified he did not follow this routine on July 30, 2013, when Bo bit Kummerling. The district court found that it was more likely than not that the Munkhoffs knew Bo had dangerous propensities, even if he was well-controlled in certain situations and environments.

For the district court to properly uphold the jury's damages award, it must be evident that the court (1) contemplated what it would have awarded if it had been the finder of fact and (2) determined that any difference between the jury award and what the court would have awarded is not so great as to show a verdict based on prejudice or passion. *Barnett*, 123 Idaho at 365, 848 P.2d at 423. The district court, after it weighed all of the evidence, determined the credibility of the witnesses, considered the permanent nature of Kummerling's injuries, found that the jury award was not only reasonable but very close to what the court would have awarded. The district court also found that the Munkhoffs' failed to present evidence that the verdict of the jury was the result of prejudice, sympathy, or was a compromise verdict, nor do we discern any such evidence. As such, the district court did not abuse its discretion when it denied the Munkhoffs a new trial.

2. The jury's verdict was supported by substantial and competent evidence.

"To grant a new trial, the court must apply a two-prong test: (1) the court must find that the verdict is against the clear weight of the evidence and that the ends of justice would be served by vacating the verdict; and (2) the court must conclude that a retrial would produce a different result." *Lanham v. Idaho Power Co.*, 130 Idaho 486, 498, 943 P.2d 912, 924 (1997) (internal citation omitted). "This standard requires more than a mere possibility; there must be a probability that a different result would be obtained in a new trial." *Sheridan v. St. Luke's Reg'l Med. Ctr.*, 135 Idaho 775, 782, 25 P.3d 88, 95 (2001). The analysis for a Rule 59 motion alleging that there is insufficient evidence to support the verdict is similar to the analysis for an argument claiming the jury's damages award was excessive. That is, "the court must weigh the evidence presented at trial and grant the motion only where the verdict is not in accord with its assessment

of the clear weight of the evidence." *Id.* In this case, the district court weighed the evidence and the credibility of the witnesses. In doing so, the court considered how it would have allocated fault based on the evidence and found the disparity was nominal.

The Munkhoffs' appeal offers little in the way of legal argument to support a "probability that a different result will be obtained in a new trial." They argue there is no evidence proving they were custodians of Bo at the time of the incident, no evidence proving they had influence or control over Sam, and that the jury was motivated by a desire to punish parents whose adult children cause an injury through their own lack of judgment.

In its order denying the Munkhoffs a new trial, the district court weighed the evidence and allocated how it would have assigned fault to each party based on that evidence, ultimately concluding that a retrial would not produce a different result. The court exercised its discretion appropriately.

First, the district court concluded that Kummerling was aware of Bo's aggressive propensities based upon Bo's behavior whenever Kummerling worked in his yard. This includes excessive barking and charging at the fence. The district court also found that Kummerling voluntarily took the risk of petting Bo, a dog he knew was aggressive and threatening, even though he acted with Sam's permission and assurance that Bo would not bite him. Based upon the evidence and testimony, the district court concluded that, like the jury, it would have allocated some degree of fault to Kummerling.

Second, the court agreed with the jury's allocation of fault to Robyn because it did not find her testimony credible. The court did not believe she did not know that Bo was aggressive until after he bit Kummerling. Further, the court did not believe her testimony that Bo was a kind and loving dog at all times. Furthermore, she had an opportunity to warn Kummerling that Bo was dangerous, but instead told him to spray Bo with water whenever he charged the fence.

Third, the court agreed with the jury that Sam, as Bo's owner, had the greatest responsibility for the dog when he was in town and staying with the Munkhoffs. The court also determined that Sam had the most knowledge of Bo's propensities and, therefore, knew exactly how dangerous Bo was. Sam even stated it was not safe for his mother to walk the dog because she could not control him. Additionally, the court found Sam's testimony to be the least credible, especially after he admitted he lied to Officer Deus to retrieve Bo from the shelter and then lied to her again about where he was living to "get her off [his] back."

10

Finally, as the district court considered the evidence, it found: 1) that Mark had knowledge of Bo's propensities; 2) that Mark knew what was required by the Ordinance to harbor an aggressive and dangerous animal; 3) that Mark agreed to harbor the dog; 4) that Mark was Bo's primary caretaker in July 2013; and 5) that Mark considered Bo "part of the family." Based on this evidence, the court allocated a degree of fault for Mark that closely matched that assigned by the jury. More importantly, the disparity between the jury and the court's allocation did not shock the conscience; rather, the court stated it was convinced of the reasonableness of the jury's allocation and found that it was not based on passion or prejudice.

In its assignment of fault to the parties, the district court considered the probability that a different result may occur if the case were retried. The court, in its discretion, stated that its allocation of fault was nominally different from the jury's allocation and supported its decision with reasoned analysis, ultimately negating the probability of a different result at a new trial.

This Court will not "overrule the trial court concerning request for additur or a new trial . . . where the trial court stated the reasons for its ruling with sufficient particularity, unless the bases for the ruling [are] obvious from the record, and where the trial court did not abuse its discretion." *Tuttle v. Wayment Farms, Inc.*, 131 Idaho 105, 107, 952 P.2d 1241, 1244 (1998). Accordingly, we hold that the district court did not abuse its discretion because it weighed the evidence and found the jury's non-economic damages award was not unconscionable and that a retrial would not produce a different result.

3. Remittitur of damages.

If the district court determines that a jury's damages award is so excessive that it can only have been the result of passion or prejudice, the court may condition the denial of a motion for a new trial on acceptance of a remittitur. *Quick*, 111 Idaho at 770, 727 P.2d at 1198; I.C. § 6-807. A remittitur is only an alternative to a new trial, and the decision to reduce a damage award is discretionary. *Id.*; *see also* I.C. § 6-807(2) ("the district court may exercise its discretion to reduce or increase such award in order to make the same consistent with the losses as shown by the evidence"). If the district court decides to reduce the amount of a jury award, it must enter detailed findings of fact and conclusions of law explaining its reasoning and the basis for the reduction. *Sanchez v. Galey*, 112 Idaho 609, 616, 733 P.2d 1234, 1241 (1986); I.C. § 6-807(2).

Here, the Munkhoffs offer the same arguments for the district court's denial of their motion for remittitur as they did for their motion to grant a new trial under Idaho Rules of Civil

Procedure 59(a)(F) and 59(a)(G)—passion or prejudice and insufficiency of the evidence, respectively. In its amended memorandum decision and order denying the Munkhoffs' motion for new trial or remittitur, the district court specifically addressed the four criteria in Idaho Code section 6-807. The district court found: (1) the jury verdict was supported by the evidence, including the fact that the court would have come to the same conclusion and allocated the liability to a similar degree as the jury; (2) the injuries to Kummerling were so severe and commensurate with the damages awarded that the jury's award did not shock the conscience of the court; (3) there was no factual or legal error during the presentation of the evidence; and (4) the award was not a result of passion or prejudice. *Hei v. Holzer*, 145 Idaho 563, 569, 181 P.3d 489, 495 (2008). Because the district court articulated its reasons for denying a new trial or remittitur, we affirm the court's exercise of discretion in that regard.

4. The Munkhoffs' motion for a new trial did not identify a legal error.

The Munkhoffs moved for a new trial pursuant to Rule 60(b)(3), alleging fraud, misrepresentation, or misconduct by an opposing party. In their motion, The Munkhoffs claimed Kummerling's representations that he was hard of hearing were untruthful, contending that Kummerling's alleged conduct constituted fraud. On appeal, the Munkhoffs attempt to preserve this issue by claiming they are entitled to relief under Rule 60(b)(6). Rather than offer legal argument or authority to support their request for relief, the Munkhoffs generally contend they

> were denied relief from judgment pursuant to I.R.C.P 60(b). All of the foregoing reasons justify relief from final judgment. The excessive damages assessed against Mark and Robyn Munkhoff and the fact that such damages were awarded based on grossly insufficient evidence to support the Munkhoffs' culpability are more than sufficient to justify relief from final judgment in this case. The trial court abused its discretion in denying the Munkhoffs relief from final judgment.

This is a blanket statement that attempts to incorporate all arguments and authority cited for each issue into the Munkhoffs' request for relief under Rule 60(b)(6). This Court has stated that "[a] general attack on the findings and conclusions of the district court without specific reference to evidentiary or legal errors, is insufficient to preserve an issue." *Jeffcoat v. Idaho Department of Corrections*, 161 Idaho 594, 596, 389 P.3d 139, 141 (2016) (internal quotations and citation omitted). The Munkhoffs do not present any case law, relevant statutes, or evidence from the trial to allow this Court to discern how relief pursuant to any section of Rule 60(b) might be legally supported. "Where an appellant fails to assert his assignment of error with

particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court." *Bach v. Bagley*, 148 Idaho at 790, 229 P.3d at 1152. Indeed, "[t]his Court will not search the record on appeal for error." *Id.* Thus, as a general rule, "[t]his Court does not consider issues cited on appeal that are not supported by propositions of law, authority or argument." *Carney v. Heinson*, 133 Idaho 275, 283, 985 P.2d 1137, 1145 (1999) (internal quotations and citation omitted); I.A.R. 35(6). "Consequently, to the extent that an assignment of error is not argued and supported in compliance with the I.A.R., it is deemed to be waived." *Bagley*, 148 Idaho at 790, 229 P.3d at 1152. Because the Munkhoffs have not presented this Court with any authority to support their argument, they have waived this issue on appeal.

## C.    We award costs to Baerbel Litke

Neither party seeks an award of costs or attorney fees on appeal. However, Idaho Appellate Rule 40 provides this Court with discretion to award costs on appeal "as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." Accordingly, Baerbel Litke is entitled to costs as the prevailing party on appeal.

## IV. CONCLUSION

We affirm the district court's denial of the Munkhoffs' motion for summary judgment and for new trial or remittitur. Costs are awarded to respondent.

Chief Justice BURDICK, Justices HORTON, BRODY and Justice *pro tem* HAYNES, CONCUR.

13