# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48919

RUTH ANN NORDGAARDEN, a widowed woman,

    Plaintiff-Counterdefendant-Respondent,

v.

KERMIT KIEBERT, a married man,

    Defendant-Counterclaimant-Cross Claimant-Respondent,

and

KAY KIEBERT, a single woman,

    Defendant-Cross Defendant-Appellant,

and

SUSAN KIEBERT,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Coeur d'Alene, September 2022 Term

Opinion filed: March 24, 2023

Melanie Gagnepain, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Barbara A. Buchanan, District Judge.

The decision of the district court is <u>affirmed.</u>

Ramsden, Marfice, Ealy & De Smet, LLP, Coeur d'Alene, for Appellant Kay Kiebert. Jack A. Mosby argued.

Finney Finney & Finney, PA, Sandpoint, for Respondent Kermit Kiebert. Rex A.M. Finney argued.

J.T. Diehl, Sandpoint, for Respondent Ruth Ann Nordgaarden. James T. Diehl argued.

---

1

ZAHN, Justice.

This case concerns a partition action. Following a court trial, the district court determined that a physical partition of the property would result in great prejudice and ordered the parties to sell the property and split the proceeds equally. Kay Kiebert appeals the district court's order, arguing that the district court utilized the wrong standard for determining whether "great prejudice" would result from a physical partition and that it also relied on inappropriate considerations in determining that great prejudice would result. We affirm the district court's order.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Appellant Kay Kiebert is the sister of Respondents Ruth Ann Nordgaarden and Kermit Kiebert. In 1957, the parties' parents bought Lot 2 of Lutton's Lake Lots ("Kiebert Property"). The Kiebert Property contains 5.7 acres of land that abuts Lake Pend Oreille. The property is 275 feet wide, about 800 feet deep, and has approximately 300 feet of waterfront. After buying the property, the couple and their children moved into an unfinished stone house on the property. The parties' father died in 1991 and their mother died in 1992. Their three surviving children, Ruth Ann, Kermit, and Kay each hold an undivided one-third interest in the property.

At the time of the trial in this matter, the Kiebert Property consisted of the stone house, several small outbuildings, and two uninhabitable mobile homes. When the Kiebert family first moved onto the property in the 1950s, the stone house lacked running water, plumbing, heating, and electricity. Although the Kieberts made some improvements over the years, at the time of trial, the house remained unfinished.

The stone house has cement floors, an unfinished kitchen, and no heating system aside from a fireplace. The sewer system on the Kiebert Property was installed before Bonner County implemented sewer standards. None of the witnesses at trial had any memory of whether the three septic tanks on the Kiebert Property have been replaced or pumped since they were installed. The sewer system periodically leaches effluent from the ground into lower elevations of the Kiebert Property. The water system on the Kiebert Property has remained unchanged since its installation in the 1950s. Unfiltered water is pumped from the lake to the stone house. Occasionally, the pipes freeze and break, and the stone house is without water until the pipes are repaired.

The Kiebert Property was previously encumbered by a mortgage that the Kiebert parents had taken out against the property. The parties were unable to keep the mortgage current. Following threats of foreclosure, Kermit paid off the mortgage with a loan he obtained.

The evidence at trial also addressed the three siblings' involvement with the Kiebert Property and their ability to financially contribute to the expenses associated with the property. Ruth Ann and her husband, Glen, lived on the Kiebert Property until 2006. At the time of the district court's decision, Ruth Ann was 75 years old, retired, and lived alone. At trial, Ruth Ann testified that she was several months behind on her own mortgage payments and had no money to pay taxes, maintenance, or other fees on the Kiebert Property.

Kermit has not lived on the Kiebert Property since his parents' death. At the time of the district court's decision, Kermit was 78 years old and mostly retired. Kermit serves as the Chair of the Board of Environmental Quality for the Idaho Department of Environmental Quality. Accordingly, Kermit is familiar with the sewer and water systems on the Kiebert Property. At trial, Kermit testified that he did not have the money to spend towards maintenance or taxes on the Kiebert Property.

Kay moved into the stone house with two of her children in April 1997 after she and her husband divorced. At the time of the district court's decision, Kay was 76 years old and was the only person living on the Kiebert Property. After the mortgage was paid off, Kay was unable to pay the property taxes. In May 2012, Kay and Kermit borrowed money from Kay's daughter and son-in-law to pay the delinquent property taxes. At the time of trial, property taxes were again overdue for the 2018, 2019, and 2020 tax years.

## B. Procedural Background

On August 1, 2019, Ruth Ann filed a verified complaint for judicial partition, seeking an order that the Kiebert Property be sold. The complaint also requested an award of attorney fees and costs incurred during the partition action and that they "be deemed a lien against the real property and satisfied prior to distribution of any proceeds." At trial, Ruth Ann testified that if the district court ordered the property to be partitioned in kind (*i.e.*, physically partitioned), she would like to receive the property with the stone house and the panoramic view.

Kermit filed an answer, counterclaim, and cross-claim arguing that if all parties could agree to the material terms, Kay should be able to purchase his and Ruth Ann's interest in the Kiebert Property and reimburse their out-of-pocket expenses. Alternatively, if the parties could not reach

3

an agreement, Kermit asked the district court to order the Kiebert Property sold and distribute the proceeds to the parties. Kermit requested reimbursement for the personal funds he had expended to satisfy the mortgage and real property taxes on the Kiebert property, but later abandoned this request at trial.

Kay answered Ruth Ann's complaint and Kermit's counterclaim and asserted that the property could be physically partitioned without great prejudice and, therefore, the district court should deny Ruth Ann's and Kermit's requests for a partition by sale. Kay's answer included a notice of a claim for "an unsecured lien on the property for sums expended by [Kay] to protect, preserve and maintain the subject property."

The district court held a three-day court trial on March 25, 26, and April 9, 2021. During the trial, the judge walked the boundaries of the Kiebert Property. After the trial, the district court issued its written decision and order, which determined that physically partitioning the property would result in great prejudice to the owners because: (1) none of the options for physically partitioning the property would result in separate parcels of equal value, and (2) physically partitioning the property in compliance with the Bonner County planning and zoning code would be too costly for the parties to undertake. The district court ordered the Kiebert Property to be listed for sale, that the sale proceeds first be used to pay closing costs and outstanding real property taxes, and the remainder of the proceeds be distributed equally amongst the parties. The district court determined that the parties were not entitled to reimbursement for past amounts they may have spent on the Kiebert Property.

Kermit filed a motion to reconsider, amend or make additional findings or conclusions, amend the judgment, and/or alter or amend the judgment, and a motion to clarify, which requested the district court to clarify the terms of the sale listing, to order Kay to pay all delinquent real estate taxes, and to order Kay to vacate the property 30 days after closing. The district court denied Kermit's motion to reconsider. However, the district court granted Kermit's motion to amend or make additional findings or conclusions. The district court ruled that the real estate agent listing the property for sale had sole discretion to determine the listing price so long as it was not less than $2.6 million. Additionally, the district court ordered Kay to vacate the Kiebert Property at closing unless otherwise agreed upon by the buyer. Kay timely appealed.

4

## II. ISSUES ON APPEAL

1. Whether the district court erred when it determined that physical partition of the Kiebert Property could not occur without great prejudice to the parties?

2. Whether any of the parties are entitled to attorney fees?

## III. STANDARD OF REVIEW

In *Pandrea v. Barrett*, this Court determined, "[t]he inquiry upon reviewing a trial court's order partitioning real property of tenants in common is: '[D]id the court act erroneously upon the facts presented?'" 160 Idaho 165, 171, 369 P.3d 943, 949 (2016) (quoting *Richardson v. Ruddy*, 15 Idaho 488, 495, 98 P. 842, 844 (1908)). This Court cited to the 1908 decision in *Richardson v. Ruddy* for this standard. In *Richardson*, this Court held that the appellant incorrectly formulated the issue as one of jurisdiction to enter an order partitioning the real property when the issue was really whether "the court act[ed] erroneously upon the facts presented." 15 Idaho at 495, 98 P. at 844–45. The *Richardson* Court stated that the trial court's decision was subject to a clearly erroneous standard of review, which is the standard of review employed when reviewing a trial court's factual findings. *Id. See also* I.R.C.P. 52(a)(7) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous[.]").

While the "clearly erroneous" standard is the proper standard of review for the district court's factual findings, it is not the appropriate standard of review for the district court's decision on the partition claims. The legal decision to partition real property is one "subject to the equitable jurisdiction of the court[.]" *Eli v. Eli*, 557 N.W.2d 405, 408 (S.D. 1997) (quoting *Braaten v. Braaten*, 278 N.W.2d 448, 450 (S.D. 1979)). *See also* 130 Am. Jur. *Trials* 95 ("[P]artition is generally classified as an equity action."). "This Court reviews the district court's rulings on equitable remedies for an abuse of discretion." *Climax, LLC v. Snake River Oncology of E. Idaho, PLLC*, 149 Idaho 791, 794, 241 P.3d 964, 967 (2010) (citation omitted). Therefore, the proper standard of review for an order to partition real property is an abuse of discretion standard. This is consistent with other jurisdictions, which also employ an abuse of discretion standard of review for partition actions. *See* 5 C.J.S. *Appeal and Error* § 836. The holding in *Richardson* is overruled to the extent it suggests we review a district court's partition order under a clearly erroneous standard of review. However, we continue to employ the clearly erroneous standard when reviewing the district court's factual findings underlying its partition order.

To determine if a trial court abused its discretion, this Court must analyze "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## IV. ANALYSIS

**A. The district court did not err when it determined the Kiebert Property could not be physically partitioned without great prejudice to the parties.**

"An action for partition asks the court to divide property owned by multiple co-tenants based on each individual owner's interests in the property." *Wilson v. Mocabee*, 167 Idaho 59, 67, 467 P.3d 423, 431 (2020). Partition in kind is favored over partition by sale. *See generally* Idaho Code § 6-501. However, a trial court "may order a sale of the property if a partition cannot be made without great prejudice." *Cox v. Cox*, 138 Idaho 881, 886, 71 P.3d 1028, 1033 (2003). "The burden of proving that a partition by sale would better promote the owners' interests is upon the party requesting a partition by sale." 68 C.J.S. Partition § 119.

1. <u>The great prejudice determination must take into account the totality of the circumstances.</u>

Idaho Code section 6-501 addresses when an owner may file an action for partition and provides that the property should be physically partitioned unless the partition cannot be made without "great prejudice" to the parties:

> When several cotenants hold and are in possession of real property as parceners, joint tenants or tenants in common, in which one (1) or more of them have an estate of inheritance, or for life or lives, or for years, an action may be brought by one (1) or more of such persons for a partition thereof, according to the respective rights of the persons interested therein, and for a sale of such property, or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners.

Idaho Code section 6-512 also discusses the "great prejudice" standard:

> If it be alleged in the complaint and established by evidence, or if it appear [sic] by the evidence without such allegation in the complaint, to the satisfaction of the court, that the property, or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof.

Kay contends that the district court erred when it considered compliance with zoning ordinances and cost to the parties in determining that the property could not be physically partitioned without "great prejudice" to the parties. Beyond the plain language of these statutes, there is little guidance for district courts in Idaho on what qualifies as "great prejudice" under

6

Idaho Code sections 6-501 and 6-512. Accordingly, we first address the correct standard to apply when evaluating whether "great prejudice" would result from a physical partition.

Kay urges this Court to adopt a standard in which great prejudice exists "only when there is virtually no possible way to divide the property without destroying its usefulness to the co-owners." Ruth Ann and Kermit argue for a great prejudice standard that considers a variety of factors, including whether the resulting parcels would comply with local zoning ordinances, the fair market value of the resulting parcels, the owners' ability to contribute to expenses associated with partitioning the property, and whether multiple owners seek ownership of the same parcel.

This Court exercises free review over the interpretation and application of a statute. *Callies v. O'Neal*, 147 Idaho 841, 847, 216 P.3d 130, 136 (2009). "[S]tatutory interpretation begins with the literal language of the statute. If the statutory language is unambiguous, we need not engage in statutory construction and are free to apply the statute's plain meaning." *Id.* (citations omitted). However, if the statutory language is ambiguous, this Court must "look to rules of construction for guidance and consider the reasonableness of proposed interpretations." *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 582, 416 P.3d 951, 954 (2018) (citation omitted). "[S]tatutory language is ambiguous where reasonable minds might differ or be uncertain as to its meaning." *Id.* (internal quotations and citation omitted).

Beginning with the statutory language, "great prejudice" is not defined by statute. There are multiple, reasonable interpretations of the phrase. Although both Ruth Ann and Kermit point to our decision in *Cox* for the premise that compliance with zoning ordinances is an element of the great prejudice analysis, our discussion of zoning compliance in that case was fleeting. 138 Idaho at 886, 71 P.3d at 1033.

In *Cox*, this Court affirmed the district court's determination that, because the property included one house and one barn, the property could not be physically partitioned between the two parties without great prejudice. *Id.* While the district court also stated that zoning ordinances likely prohibited the division of the property, it does not appear that either party challenged this conclusion on appeal. *Id.* It does not appear that the parties argued competing standards for "great prejudice." As a result, our decision in *Cox* is not instructive on the legal standard for great prejudice. Given the lack of any statutory definition or Idaho case law defining the phrase, we turn to case law from other jurisdictions.

The generally accepted test in other jurisdictions for whether a partition in kind would result in great prejudice to the owners is "whether the value of the share of each in case of a partition would be materially less than his share of the money equivalent that could probably be obtained for the whole." *Fike v. Sharer*, 571 P.2d 1252, 1254 (Or. 1977) (internal quotations and citation omitted). *See also Rieger v. Ackerman*, 939 N.W.2d 413, 416 (N.D. 2020) ("[G]reat prejudice exists when the value of the share of each in case of a partition would be materially less than his share of the money equivalent that could probably be obtained from the whole."); *Idema v. Comstock*, 110 N.W. 786, 787 (Wis. 1907) (same); *Williamson Inv. Co. v. Williamson*, 165 P. 385, 389 (Wash. 1917) (same); *Williams v. Wells Fargo Bank & Union Tr. Co.*, 133 P.2d 73, 75 (Cal. Dist. Ct. App. 1943); *Gartner v. Temple*, 855 N.W.2d 846, 851 (S.D. 2014) ("[T]he effect of partition in kind 'must be weighed against the effect of a sale of the land as a unit and the effect of a sale of the land in parcels.'").

However, at least one jurisdiction has interpreted the standard to encompass the consideration of both monetary and non-monetary factors. *See Eli*, 557 N.W.2d 405. In *Eli*, the South Dakota Supreme Court interpreted a partition statute nearly identical to Idaho Code section 6-501. *Compare* S.D. Codified Laws § 21-51-1, *with* Idaho Code § 6-501. Before that decision, the South Dakota Supreme Court followed the generally accepted standard that great prejudice would result when "the value of each cotenant's share would be materially less than his share of the money equivalent that could probably be obtained for the whole." *Eli*, 557 N.W.2d at 408 (internal quotations omitted). However, in *Eli*, the South Dakota Supreme Court recognized that "great prejudice" involves more than just monetary considerations:

> [M]onetary considerations, while admittedly significant, do not rise to the level of excluding all other appropriate considerations. SDCL 21-45-1 and 21-45-28 speak of "great prejudice", not "great financial prejudice". The sale of property "without [the owner's] consent is an extreme exercise of power warranted only in clear cases." We believe this to be especially so when the land in question has descended from generation to generation. While it is true that the Eli brothers' expert testified that if partitioned, the separate parcels would sell for $50 to $100 less per acre, this fact alone is not dispositive. One's land possesses more than mere economic utility; it "means the full range of the benefit the parties may be expected to derive from their ownership of their respective shares." Such value must be weighed for its effect upon all parties involved, not just those advocating a sale. To this extent, the previous monetary definition of "great prejudice" as found in *Johnson, supra* is modified to include consideration of the totality of the circumstances.

*Id.* at 409 (internal citations omitted).

We agree with the South Dakota Supreme Court that the determination of whether "great prejudice" exists should encompass consideration of the totality of the circumstances. Idaho's partition statutes are similar to those of South Dakota. The phrase "great prejudice" encompasses more than just monetary considerations. While the fair market value of real property may be a primary consideration for landowners, we agree that it is likely not the only consideration. Our trial courts are well-equipped to take evidence of the totality of the circumstances and weigh the equities to reach a fair and just conclusion concerning whether great prejudice would result from a physical partition of real property. In making this determination, our trial courts should have the ability to consider and weigh all of the evidence.

While Kay urges us to take a narrower view of great prejudice, she has failed to cite a single case that supports her proposed test, which focuses on the usefulness of a property. Kay selectively quotes from the cases on which she relies, while ignoring other parts of the decisions. For example, she references that "partition by sale is appropriate where partition in kind would destroy the property's usefulness" from *Friend v. Friend*, 964 P.2d 1219, 1222 (Wash. Ct. App. 1998). While true, the Washington Court of Appeals also stated in *Friend* that:

> A partition action is both a right and a flexible equitable remedy subject to judicial discretion. The trial court is accorded great flexibility in fashioning relief under its equitable powers. . . Thus, a court may order partition by sale, whether or not the parties request it, provided satisfactory evidence demonstrates that the property or any part of it cannot be divided without great prejudice to the owners. *For example*, partition by sale is appropriate where partition in kind would destroy the property's usefulness.

*Id.*, 964 P.2d at 1221–22 (emphasis added).

Kay fails to recognize that the court in *Friend* did not state that great prejudice only exists when partition in kind would destroy the property's usefulness, but instead, stated that it was within the trial court's broad discretion to consider the property's usefulness when determining if partition would result in great prejudice to the owners. Similarly, none of the other cases that Kay relies on hold that great prejudice only exists when partition in kind would destroy the property's usefulness. *See Williams*, 133 P.2d at 75; *Williamson Inv. Co.*, 165 P. at 389; *Eli*, 557 N.W.2d 405. Kay's proposed test would inappropriately eliminate consideration of the value of the property and other factors potentially relevant to the analysis of great prejudice.

Kay also contends that the costliness of zoning compliance should not be considered as part of the great prejudice analysis. For the reasons discussed above, we reject this argument. The

district court did not err by considering the costs associated with ensuring the resulting parcels complied with local zoning ordinances. Those costs are but one of the totality of the circumstances bearing on the great prejudice analysis in this case.

We therefore hold that, for purposes of a partition action, a trial court's determination of whether great prejudice would result from a physical partition of the property should be based on the totality of the circumstances. The cause of action for partition is one that sounds in equity. For the reasons stated above, the most equitable approach to making a determination is to consider the totality of the circumstances.

2. The district court's factual findings are supported by substantial and competent evidence.

Having resolved the appropriate legal standard for the determination of great prejudice in a partition action, we now turn to Kay's argument that the district court's factual findings were not supported by substantial and competent evidence. Kay's arguments are unpersuasive for the reasons explained below.

a. *The district court's finding that the property could not be equitably partitioned into three parcels was supported by substantial and competent evidence.*

First, Kay argues the district court failed to consider an unequal but equitable division. Kay contends that the district court could equitably divide the Kiebert Property by making Kay's parcel with the stone house smaller than the other two parcels or by dividing the property into four parcels, including a common tract of water frontage. In response, Ruth Ann contends that Kay never offered testimony of the costs related to effectuating such a division or identifying the value of the resulting lots. Kermit argues that Kay failed to prove how to divide the Kiebert Property into separate parcels of equal value. Additionally, Kermit notes that Kay's partition recommendation fails to account for the fact that both Ruth Ann and Kay testified that they wanted to receive the parcel with the stone house.

The district court determined that none of the available options discussed at trial for subdivision of the Kiebert Property would result in separate parcels of equal value. The district court reached its conclusion after hearing testimony from nine witnesses, including Kay's expert witness, Scott Brown, a land use planning consultant, and Kermit's expert witness, Jeremy Grimm, a professional land use planner. After considering the evidence presented at trial, the district court found that the property's value was derived solely from its waterfront and its view and that Kay insisted on receiving the portion of the property that included the stone house and the waterfront view. The district court determined that the property could not be physically partitioned in

10

compliance with Bonner County Code unless the parties obtained approval from the county for a minor land division, subdivision, conservation subdivision or planned unit development.

Kay fails to cite evidence in the record supporting her contention that the evidence established the property could be equitably divided into three or four parcels. Although Kay cites Brown's testimony in support of this contention, Brown never testified to an unequal but equitable division. Further, Kay has not established that the district court's findings that the property's value was derived solely from its waterfront view and that Kay insisted on receiving that portion of the property are clearly erroneous. Given these findings, the district court's resulting finding that the Kiebert Property could not be equitably divided into three parcels is supported by substantial and competent evidence.

Kay's contention that the property could have been equitably divided into four parcels is similarly unsupported by the record. Brown did testify about subdividing the property into four parcels with one parcel serving as a common tract of the water frontage for the benefit of the other three parcels. However, Brown also testified that this option would require an administrative variance from Bonner County. After considering the totality of the evidence, the district court found that obtaining county approval to divide the property would be difficult because the property did not have urban water or urban sewer services. The district court found that the process to make the necessary improvements and obtain county approval would be extremely costly. A review of the record demonstrates that these findings are supported by substantial and competent evidence.

We conclude that Kay's challenge to the district court's finding also fails because she introduced no evidence below indicating the value of the resulting parcels following a physical partition. She therefore failed to establish that the resulting parcels would be reasonably equivalent in value. After considering Kay's arguments and the record in this case, we conclude that the district court's finding that none of the physical partition options discussed at trial would result in separate parcels of equal value is supported by substantial and competent evidence.

b. *The district court's finding that the parties were unable to pay for the expenses to bring the Kiebert Property in compliance with Bonner County Code was supported by substantial and competent evidence.*

Kay next attacks the district court's factual finding that the parties could not afford the costs associated with subdividing the property into Bonner County Code-compliant parcels. Kay asserts the district court "failed to consider evidence that Kay had financial means to pay for the subdivision under County Code." Ruth Ann argues that the district court properly weighed the

11

evidence presented and determined that the Kiebert Property could not be equitably divided in compliance with local land use regulations without significant expense to the parties. Both Ruth Ann and Kermit maintain that the parties cannot afford to pay for the costs of subdividing the property.

The district court determined there were two potential methods for partition: (1) subdividing the property under Bonner County's Minor Land Division ("MLD") provisions, or (2) subdividing the property in accordance with other Bonner County Code provisions. The district court found that in order to comply with the Bonner County Code, the parties would have to install sewer and water services, which would require a "large expenditure of both time and money." The district court found that the parties could not afford the required monetary expenditures.

The record demonstrates substantial and competent evidence to support the district court's finding that each of the potential county processes to partition the property involved significant expenses. To begin, both Brown and Grimm testified that the parties could partition the property with an MLD. However, both experts explained that the MLD would require an administrative variance because the resulting lots would not comply with the lot depth and width requirements in county code. Additionally, Grimm testified that the approval of a MLD would take 3 to 4 months and cost the parties roughly $18,000 to $22,000.

Next, Grimm testified that the parties could also apply for subdivision pursuant to Bonner County Code section 12-660(D)(2)(b) and (g) and request a reduction in minimum lot size and dimensions. However, this process would have different standards for road design, fire, safety, and storm water. Further, the likelihood of allowing subdivision into smaller lot sizes would be dependent on the water and sewer services on the property. Brown also testified that a subdivision would be feasible with a planned unit development ("PUD") overlay. He explained that a PUD is more expensive and would require more time to achieve because the process involves public hearings.

At trial, it was undisputed that the Kiebert Property was not served by an urban sewer or water system. The district court relied on this fact when it determined that partitioning the Kiebert Property into three parcels under 2.5 acres in size, without having the appropriate water and sewer systems, would not comply with Bonner County Code. The available partition options required the installation of sewer and water services—which the district found to be both time consuming and costly. In light of the aforementioned evidence, the district court's finding that the available

12

methods to physically partition the Kiebert Property would require significant expense was supported by substantial and competent evidence.

Kay contends that the district court erred in finding that the parties could not afford the significant expenses associated with either the MLD or subdivision processes. To this point, Kay cites to the following colloquy between Kay and Ruth Ann's attorney:

Q. Do you have the funds to even contribute to those kind of expenses?

A. Yes, I do.

Q. And where do those monies come from?

A. I inherited some money.

. . .

Q. If putting in a road, a hard-surfaced road and a cul de sac, $50,000 or $60,000, are you prepared to pony up those kinds of funds in order to make this property –

A. How would I answer that? I guess my hope is that I would have my piece of property, and they can sell their two-thirds and then that – whoever purchases that could do whatever they want to with it.

Q. Well, it's my understanding – and I could be wrong on this – but it's my understanding that a lot of those improvements have to be installed before you get the re-plat approval. So where is the money going to come from if you go forward with the re-plat, even if it's possible?

A. I can't answer that because I don't exactly know what all would have to be done.

Contrary to Kay's argument, she did not testify that she could afford the expenses, but instead that she hoped she could take her portion of the property and her siblings could then figure out what to do with their portions of the property. When Kay was advised during her testimony that the improvements had to be made before the property could be partitioned and asked how the cost of the improvements would be paid, Kay stated she could not answer because she did not know what was required. At no point did Kay state that she could afford the cost of the necessary improvements. Nor did she identify financial resources available to her other than the very cryptic, "I inherited some money." Kay's testimony at trial does not support her claim that she could have borne the costs entailed in a physical partition of the property.

Further, at trial Kay acknowledged her and Ruth Ann's financial struggles—confirming that the property taxes and mortgage payments had been in arrears. Ruth Ann testified that she was two months behind on her own mortgage payment because she had to pay for mediation in this case. Kermit also testified that he did not have the means to pay the expenses required to partition the property. A reasonable trier of fact could accept and rely upon this testimony and conclude that

13

the parties were unable to pay for the necessary improvements. Accordingly, the district court's finding that the parties would be unable to pay the expenses to bring the Kiebert Property in compliance with Bonner County Code was supported by substantial and competent evidence.

### c. The district court sufficiently considered the likelihood of obtaining a variance when making its findings and ordering the sale of the property.

Kay also argues that the district court erred because it failed to give sufficient weight to Brown's testimony that Bonner County liberally granted administrative variances. Kay argues that Brown's testimony established that, if the district court ordered a physical partition, then Bonner County would grant the variance required to make the resulting parcels compliant with Bonner County Code. Kay contends that the district court should have ordered physical partition "knowing that Bonner County was very likely to grant any necessary variances and/or the minor land division." Kay's argument on this point requests us to reweigh the evidence, which we will not do.

It is within the trial court's province "to weigh conflicting evidence and testimony and to judge the credibility of the witnesses." *Benninger v. Derifield*, 145 Idaho 373, 374, 179 P.3d 336, 338 (2008). Brown's testimony focused on the probability, not the certainty, that Bonner County would grant the necessary approvals to make the resulting parcels compliant. The district court appears to have given little weight to the likelihood that Bonner County would have approved a variance in making its factual findings and in analyzing whether great prejudice would result from a physical partition. The problem is that even with a variance from the county, creating three equally valuable parcels was insurmountable given the unique characteristics of the Kiebert Property. These determinations were within the province of the district court. Its findings are supported by substantial and competent evidence, and we find no error in its decision to order a partition by sale.

### d. The district court properly disregarded Kay's argument that the property could be physically partitioned following a boundary adjustment.

Kay argues the district court erred in its great prejudice determination because it failed to consider the availability of an adjacent 40-foot strip of property. At trial, Kay's attorney argued that an adjacent 40-foot strip of land owned by Kay, Kermit, Ruth Ann, and their cousin, Alan Kiebert, could be used to make a boundary line adjustment. Kermit's attorney objected to any consideration of the 40-foot strip because the parties had not sought to partition it and Alan was not a party to the lawsuit. Kay's attorney conceded that the partition action failed to name Alan Kiebert as a party to the action, but argued the other three owners were present. Kay's attorney

14

also argued that while the parties had not sought to partition the 40-foot strip, witnesses had testified that it could be used to partition the property. The district court refused to consider the 40-foot strip when determining whether the property could be partitioned without great prejudice to the parties.

Kay argues that the district court should have considered the possibility of performing a boundary adjustment to include the 40-foot strip in the Kiebert Property and then partitioning the combined properties. Both Ruth Ann and Kermit maintain that the district court could not consider a boundary adjustment using the 40-foot strip because the strip was outside of the district court's jurisdiction. Kay responds by arguing the 40-foot strip did not need to be within the district court's jurisdiction for it to be relevant; the district court only needed to consider it as a factor when considering whether the Kiebert Property could be physically partitioned without great prejudice to the parties.

Idaho partition law directs that all persons interested in a property to be partitioned must be included as parties to the action. Idaho Code § 6-902. Ruth Ann and Kermit each filed affirmative claims, seeking the partition of the Kiebert Property. They did not seek to partition the 40-foot strip, which was a separate parcel from the Kiebert Property. Kay did not file an affirmative claim seeking to partition the 40-foot strip, nor did she seek to add her cousin Alan as a party to the partition action. Thus the partition action only sought to partition the Kiebert Property. The district court was only asked to determine whether the Kiebert Property could be physically partitioned without great prejudice to the parties. What might be possible if the Kiebert Property was joined with the 40-foot strip was not at issue. As a result, the district court did not err in refusing to consider what might hypothetically be possible if the parties joined the Kiebert Property with the adjacent 40-foot strip.

3. The district court did not abuse its discretion in ordering a partition by sale.

As discussed above, in a partition action, the district court must consider the totality of the circumstances when determining whether a physical partition of the property would result in great prejudice to the parties. In conducting its analysis of great prejudice in this case, the district court found that given the condition of the Kiebert Property, its "value is derived solely from its waterfront and its view." The district court found that in its current state, the property could not be physically partitioned because the resulting parcels would violate Bonner County zoning ordinance. The district court heard and considered expert testimony that there were several

15

methods by which the parties could seek permission from the county to create separate parcels, but found that the costs and uncertainty associated with each method were effectively unsurmountable and the parties could not afford the expenses associated with each process. The district judge personally observed the property and walked its boundaries. Thus, the district court personally observed the land and its unique qualities and limitations. The district court took all of this into account when reaching its conclusion that the property could not be partitioned without great prejudice to the parties.

Our review of the record reveals that the district court considered the totality of the circumstances when determining that the physical partition of the property would result in great prejudice to the parties. Kay has failed to establish that any of the district court's findings were erroneous or that the district court failed to consider the totality of the circumstances when making its decision. As a result, we hold that the district court did not err in determining that great prejudice would result from a physical partition and ordering the property to be sold.

Kay argues that, rather than a partition by sale, the district court should have ordered a partition in kind and addressed any unequal value between the parcels by issuing an award of owelty under Idaho Code section 6-541. Owelty is defined as "[e]quality as achieved by a compensatory sum of money given after an exchange of parcels of land having different values or after an unequal partition of real property." *Owelty*, Black's Law Dictionary (11th ed. 2019). Kay maintains that "any difference in value between the piece of the Kiebert Property that Kay wanted to retain, and the remaining portion(s) would not impact the ability to sell such remaining portion(s)."

Kay is correct that Idaho law recognizes that when partition cannot be made equal between the parties, a court may award compensation to be made by one party to another on account of the inequality. Idaho Code § 6-541. The statute recognizes that great prejudice does not result simply because the resulting parcels do not have the same exact fair market value. The determination of great prejudice, however, requires the district court to consider the totality of the circumstances. The value of the resulting parcels is only one consideration.

Contrary to Kay's interpretation, the statute does not allow the district court to ignore a showing of great prejudice and instead order monetary compensation in lieu of a sale of the property. The district court's great prejudice determination in this case included consideration of the fact that a physical partition would result in parcels that violated Bonner County Code and,

therefore, would be unsaleable. The district court also considered the fact that the parties, including Kay, could not afford to pay the costs associated with obtaining county approval for a physical partition that would result in parcels that complied with Bonner County Code. Further, Kay has put forward no evidence to establish that she has the financial resources to compensate her siblings for parcels that are unmarketable.

The owelty concept embodied in section 6-541 only applies when the court determines great prejudice would not result from the physical partition of the property, but determines there will be some inequality between the resulting parcels. Because the district court determined physical partition could not achieved without great prejudice to the parties, section 6-541 is not applicable to this case. Accordingly, the district court did not err by declining to order a physical partition and ordering Kay to pay Ruth Ann and Kermit financial compensation pursuant to section 6-541.

4. <u>There was no need to appoint referees pursuant to Idaho Code sections 6-512 and 6-513.</u>

Kay argues that the district court erred in failing to appoint referees to divide the property. Idaho Code sections 6-512 and 6-513 only require a trial court to appoint referees when the court orders a property to be physically partitioned. *See* Idaho Code §§ 6-512, 6-513. Because the district court ordered a sale of the property, it was unnecessary for the district court to appoint referees in this case.

5. <u>The district court did not err when it declined to award Kay reimbursement for past amounts expended for the Kiebert Property.</u>

Kay argues that the district court erred by failing to award her reimbursement for $45,033.16 she paid in mortgage payments, late fees, and penalties over the years. Ruth Ann and Kermit argue that Kay waived any claim to reimbursement for expenses incurred, and alternatively, that she failed to prove the amounts expended at trial. The district court determined that the parties were not entitled to reimbursement for past amounts spent on the Kiebert Property because "the parties either abandoned claims for reimbursement or offered insufficient evidence and/or inconsistent testimony about the past amounts they spent on preserving and maintaining [the Kiebert Property.]"

At trial Kay testified as follows concerning her claim for reimbursement:

Q. Are you suggesting that you should get reimbursed $124,000, whatever the number is on Exhibit A?

A. No.

Q. I said Exhibit A that's not accurate – Exhibit 1510, that expense report. And on the last page it has a number of $126,451.93.

A. Yes.

Q. So you're not asking for that money back?

A. No.

Q. Are you asking for any amount back?

A. No.

This testimony establishes that Kay waived her reimbursement claim. Kay, however, argues that "in context, [her testimony] clearly meant that she did not seek reimbursement for her contributions because she sought physical partition and opposed sale."

As the trier of fact, the district court was in the best position to discern Kay's tone and manner in answering questions about her reimbursement claim. "This Court will not substitute its view of the facts for that of the trial court." *Akers v. D.L. White Constr., Inc.*, 156 Idaho 37, 43–44, 320 P.3d 428, 434–35 (2014) (citation omitted). The district court's determination that Kay waived her claim for reimbursement is supported by Kay's own testimony. Kay simply asks us to reweigh the evidence, which we decline to do. The district court did not err in declining to award Kay reimbursement for amounts she expended on the Kiebert Property.

**B. Neither Ruth Ann nor Kermit are entitled to an award of attorney fees on appeal.**

Ruth Ann requests attorney fees on appeal pursuant to Idaho Code section 12-121 and Idaho Appellate Rule 35(b)(5), arguing that Kay has used this appeal as an attempt to delay or deny Ruth Ann the benefit of the Kiebert Property. Kermit requests attorney fees pursuant to Idaho Code sections 6-545 and 12-121. Like Ruth Ann, Kermit argues that Kay merely asks this Court to second guess the district court and has used this appeal to extend her sole occupancy of the Kiebert Property.

Idaho Code section 6-545 discusses when the costs of partition should be shared between the parties and provides:

> The costs of partition, including reasonable counsel fees, expended by the plaintiff or either of the defendants for the *common benefit*, fees of referees, and other disbursements, must be paid by the parties respectively entitled to share in the lands divided, in proportion to their respective interests therein, and may be included and specified in the judgment. In that case they shall be a lien on the several shares, and the judgment may be enforced by execution against such shares and against other property held by the respective parties. *When, however, litigation arises between*

18

*some of the parties only, the court may require the expense of such litigation to be paid by the parties thereto, or any of them.*

(Emphasis added.) This appeal is not for the common benefit of the parties to the partition action. Rather, it is an action between the parties; therefore, section 6-545 requires the parties to bear their own attorney fees.

Further, we decline to award attorney fees pursuant to Idaho Code section 12-121, which permits an award of attorney's fees to the prevailing parties in a civil action when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation. While Kay has in large part invited this Court to second-guess the district court's factual findings, she has raised an issue of first impression concerning the standard to apply when determining whether great prejudice exists. For this reason, we cannot conclude that Kay's appeal was frivolous or unreasonable. *See Petrus Fam. Tr. Dated May 1, 1991 v. Kirk*, 163 Idaho 490, 503, 415 P.3d 358, 371 (2018) (explaining the award of fees pursuant to Idaho Code section 12-121 is inappropriate when a party "in good faith raised issues of first impression.")

## V. CONCLUSION

The judgment of the district court is affirmed. The district court did not err when it determined that the Kiebert Property could not be partitioned without great prejudice to the parties and ordered a sale of the property. We decline to award attorney fees, but award costs on appeal to Ruth Ann and Kermit pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, Justices BRODY, STEGNER, and MOELLER CONCUR.

19