**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 49605**

| | | |
|---|---|---|
| JAY F. WRIGHT, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, April 2023 Term |
| | ) | |
| v. | ) | Opinion Filed: June 15, 2023 |
| | ) | |
| KRISTIE A. PARISH, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Dane H. Watkins, Jr., District Judge.

The order of the district court is reversed.

Banks Gaffney, PLLC, Idaho Falls, for Appellant, Jay Wright. Jeffrey W. Banks argued.

Olsen Taggart PLLC, Idaho Falls, for Respondent, Kristie Parish. Steven L. Taggart argued.

———————————

STEGNER, Justice.

This case involves the applicability of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). Jay Wright appeals the district court's grant of summary judgment to his ex-wife, Kristie Parish. Wright and Parish were married in 2002 and divorced in 2019. Before they were married, Wright and Parish, as single persons, purchased two adjacent parcels of real property in Island Park ("the Island Park Properties"), and their ownership of the property did not change following their marriage.

A magistrate court presided over their divorce proceedings and the distribution of their community property. The magistrate court classified as community property certain loan payments and improvements that had been made for the benefit of the Island Park Properties but specifically declined to divide the Island Park Properties because the court concluded the Island Park Properties were separate property and that it "lack[ed] authority to divide the property." The magistrate court concluded that Wright and Parish "apparently" owned the Island Park Properties as

1

tenants-in-common, each with a fifty percent interest, though it never made a definitive ruling on each party's interest, concluding only that they were "joint owners[.]"

Roughly one year after the magistrate court entered its final judgment for the divorce, Wright filed a complaint in district court seeking a partition of the Island Park Properties and for Parish to deed the Island Park Properties to him, arguing in part that his ownership interest in the Island Park Properties exceeded the fifty percent determination that the magistrate court had ostensibly made. In response, Parish moved for summary judgment, arguing that Wright's claim that he was entitled to a greater ownership interest in the Island Park Properties was precluded by the doctrines of *res judicata* and collateral estoppel. The district court granted Parish's motion for summary judgment after determining that the issues in Wright's complaint had already been litigated in the prior divorce proceedings. The district court found that Wright's argument that he had a greater ownership interest in the Island Park Properties was barred by *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). As a result, the district court concluded that the proceeds from the sale of the Island Park Properties should be equally divided between Wright and Parish. Wright timely appealed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Before they married, Wright and Parish purchased a home and land in Fremont County, Idaho, known as the Island Park Properties, for $50,000. The division of the Island Park Properties was one of the disputes in the divorce proceedings before the magistrate court. It is the only issue in dispute in this appeal from the district court. During the divorce proceedings, the magistrate court was required to categorize the couple's property as either separate or community. In an effort to discharge its obligation, the magistrate court attempted to trace the individual contributions made by each party to the Island Park Properties. The magistrate court found that a settlement statement for the purchase of the properties "show[ed] a purchase price of $50,000 with $44,933.42 going to retire a mortgage loan that existed against the property." The parties disagreed as to the source of the $50,000 used to purchase the Island Park Properties.

Wright argued that the funds were primarily from a home equity loan ("the Home Equity Loan"), which was secured by real property in Idaho Falls referred to as the Bergeson Property, and "show[ing] a principal amount credit limit of $38,362." The Bergeson Property had previously been Wright's separate property, but in order to obtain the Home Equity Loan, for which both Wright and Parish would be liable, the lender required that both Wright and Parish be listed as

2

owners of the Bergeson Property. As a result, Wright deeded the Bergeson Property from himself "to Jay F[.] Wright, a single man and Kristie Ann Parrish [sic], a single woman." By contrast, Parish argued before the magistrate court that the entire $50,000 came "from funds she was entitled to receive from her mother's estate." Curiously, the magistrate court determined that neither party could conclusively prove the source of the $50,000, yet it determined that at least a portion of the purchase price came from the joint Home Equity Loan.

Two years after they had taken out the Home Equity Loan, Wright and Parish refinanced the Home Equity Loan (this new loan was characterized by the magistrate court as the "2001 Loan"). The 2001 Loan was also secured by the Bergeson Property. The couple subsequently made joint payments on the 2001 Loan. In 2003 and again in 2010, they refinanced the Home Equity Loan and again secured the loans with the Bergeson Property. (These loans are referred to by the magistrate court as the "2003 Loan" and the "2010 Loan," respectively.) Since they never deeded the Island Park Properties to themselves as a marital community, the magistrate court determined that Wright and Parish "appear[ed]" to own the Island Park Properties as tenants-in-common.

In winding up the divorce, the magistrate court listed the assets and liabilities held by each party. The magistrate court entered findings of fact and conclusions of law tracing the contributions made to the community, including the purchase of the Island Park Properties and the payment of the loans, either from separate or community property. Next, in an apparent effort "to equalize the property and debt distribution[,]"the magistrate court determined that Parish needed to pay Wright $20,826.25. The magistrate court ordered Parish to pay the $20,826.25 to Wright "within 60 days of this order."[1]

After finalizing the necessary division to complete the divorce, the magistrate court explained that it "lack[ed] authority to divide the property." It continued: "However, in the event the parties wish to divide the asset rather than continue as tenants-in-common the court would find that Petitioner [Wright] should be awarded the property subject to a payment to Respondent [Parish] of $60,000." Later, the magistrate court ordered Parish

> to pay Petitioner [Wright] $20,826.25 to equalize the property and debt distribution. The court notes this division could be equalized by a different division of the joint savings account, but will not order that, rather leaving it to the discretion of the Respondent [Parish] on the method of payment. The court directs the payment be made within 60 days of this order. This leaves the parties as joint owners of the

---

[1] Both parties in their respective affidavits filed with the district court agree that Parish paid Wright this amount, and neither party has disputed this fact on appeal.

Island Park property. *If the parties wish to consider the Island Park property, based on this court's findings Petitioner [Wright] would owe Respondent [Parish] $39,173.75 to equalize the distribution.* If the parties wish for the court to review this matter, either may request an opportunity to submit legal authority and supplemental evidence including oral testimony.

(Italics added.) It is difficult (if not impossible) to divine what the magistrate court intended in the preceding quotation. Suffice to say, it is challenging to reconcile the magistrate court's comments.

Despite the seemingly conflicting language, the magistrate court found that the Island Park Properties were valued at $120,000 (as suggested by Wright), the property was owned as tenants-in-common, and each party's interest was apparently equivalent to half that amount—$60,000.

After the magistrate court issued its findings of fact and conclusions of law, Wright moved to amend the findings, arguing that his required contribution to the community should be reduced because a portion of his inheritance, his own separate property, had been used to pay the 2003 Loan. The magistrate court denied Wright's motion to amend, finding that the Bergeson Property, an asset of the community and not Wright's separate inheritance, was the security for the 2003 Loan.

Neither Wright nor Parish appealed the final judgment of the magistrate court. However, Wright later filed this partition action in district court, arguing that he had a greater than fifty percent ownership interest in the Island Park Properties. Parish moved for summary judgment, arguing that the parties had litigated the question of each other's ownership interests in the original divorce proceedings, and, as a result, Wright's claim was barred by the doctrine of *res judicata* or collateral estoppel. The district court agreed with Parish's argument and granted Parish's motion for summary judgment, concluding that Wright's claim that he was entitled to greater than fifty percent of the Island Park Properties was barred by both *res judicata* and collateral estoppel because the magistrate court had already fully heard and decided the issue of the parties' ownership of the Island Park Properties. Wright's appeal followed.

## II. STANDARD OF REVIEW

In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

4

party is entitled to a judgment as a matter of law. If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review.

*Ware v. City of Kendrick*, 168 Idaho 795, 798, 487 P.3d 730, 733 (2021) (internal citations omitted). "Questions of law are reviewed *de novo*, and '[w]hether an action is barred by *res judicata* is a question of law.'" *Monitor Fin., L.C. v. Wildlife Ridge Estates, LLC*, 164 Idaho 555, 559, 433 P.3d 183, 187 (2019) (alteration in original) (internal citation omitted).

## III. ANALYSIS

### A. The district court erred in granting summary judgment to Parish because neither issue preclusion nor claim preclusion apply to Wright's partition action.

A grant of summary judgment requires there to be no genuine dispute of material fact and a showing that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(a). The primary question before the district court was whether the magistrate court had properly determined that each party had an equal interest in the Island Park Properties, in which case Wright's claim that he was entitled to a greater interest would be precluded by an application of *res judicata*.

> *Res judicata* serves three purposes:

> First, it [preserves] the acceptability of judicial dispute resolution against the corrosive disrespect that would follow if the same matter were twice litigated to inconsistent results. Second, it serves the public interest in protecting the courts against the burdens of repetitious litigation; and third, it advances the private interest in repose from the harassment of repetitive claims.

*Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002) (internal quotation marks and citation omitted). "The doctrine of *res judicata* covers both claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel)." *Ticor Title Co. v. Stanion*, 144 Idaho 119, 123, 157 P.3d 613, 617 (2007) (citing *Hindmarsh*, 138 Idaho at 94, 57 P.3d at 805). Claim preclusion exists to "bar[] a subsequent action between the same parties upon the same claim or upon claims 'relating to the same cause of action . . . which might have been made.'" *Id.* (quoting *Hindmarsh*, 138 Idaho at 94, 57 P.3d at 805) (alteration in original). Separately, issue preclusion bars additional litigation of "an identical issue with the same party or its privy." *Id.* (internal citation omitted). "Separate tests are used to determine whether claim preclusion or issue preclusion applies." *Id.* Because the district court concluded that both issue preclusion (collateral estoppel) and claim preclusion (true *res judicata*) applied to Wright's claim, both will be analyzed in turn.

5

1. *The district court erred in concluding that Wright's claim was barred by the doctrine of issue preclusion (collateral estoppel).*

The district court concluded that Wright's claim to greater than fifty percent ownership of the Island Park Properties was barred by issue preclusion, finding that all five elements were present. Specifically, the district court found that Wright already had an opportunity to litigate whether he was entitled to a greater than fifty percent ownership interest in the Island Park Properties.

As an initial point, Parish argues we should not reach this question because it was not preserved by Wright before the district court. Notwithstanding Parish's argument, we conclude that Wright's argument regarding ownership of the Island Park Properties was properly preserved for appeal. In Wright's response to Parish's motion for summary judgment filed in the district court, he argued that the magistrate court had not "decided the parties' ownership interest in their jointly owned, separate property." It appears from the record that Wright has argued all along that the magistrate court's decision was limited to ascertaining and dividing *community* property, not *separate* property. Accordingly, we will address the merits of Wright's argument on this issue on appeal. *State v. Miramontes*, 170 Idaho 920, 924–25, 517 P.3d 849, 853–54 (2022) (concluding that "a party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for hearing").

In reaching the question of whether issue preclusion applies, we hold that the district court erred in determining that Wright's claim for a greater than fifty percent interest in the Island Park Properties is barred by the doctrine of issue preclusion. Issue preclusion exists to prevent "litigants from having to relitigate an identical issue in a subsequent action." *Ticor Title Co.*, 144 Idaho at 124, 157 P.3d at 618 (internal citation omitted). For issue preclusion to bar additional litigation, the following elements must be present:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case;
>
> (2) the issue decided in the prior litigation was identical to the issue presented in the present action;
>
> (3) the issue sought to be precluded was actually decided in the prior litigation;
>
> (4) there was a final judgment on the merits in the prior litigation; and
>
> (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Id.* (internal citation omitted).

6

The district court concluded that each element of issue preclusion had been met, precluding further litigation of the question of Wright's and Parish's respective ownership interests in the Island Park Properties. We disagree with the district court's decision. In order for issue preclusion to apply, a final judgment on the merits must have been rendered. *Rodriguez v. Dep't of Corr.*, 136 Idaho 90, 93, 29 P.3d 401, 404 (2001). In the couple's divorce proceedings, the magistrate court specifically disclaimed any ability to issue a judgment resolving the parties' respective ownership of the Island Park Properties. While the magistrate court offered the parties the option of requesting that the court resolve the ownership of the property, neither Wright nor Parish ever accepted the magistrate court's offer. As a result, the magistrate court never rendered a judgment determining the respective ownership of Wright and Parish in the Island Park Properties. Due to the lack of a judgment, issue preclusion does not bar Wright from bringing his suit to determine the respective ownership of the Island Park Properties. As a result, the district court erred when it concluded that Wright's attempt to prove that he has a greater than fifty percent ownership interest in the Island Park Properties was barred by the doctrine of issue preclusion.

2. *The district court erred in concluding that Wright's claim was barred by the doctrine of claim preclusion (true res judicata).*

The district court also concluded that Wright was not permitted to bring a claim that his ownership interest in the Island Park Properties exceeded fifty percent because it was barred by the doctrine of claim preclusion. The district court disagreed with Wright's argument that the magistrate court's previous decision was limited only to discussing the community property of the parties (and not the separate property of the parties, which included the Island Park Properties). Instead, the district court found that the magistrate court "had the authority to determine each party's interest in jointly owned separate property." The district court determined that, since the magistrate court properly handled the tracing of separate and community contributions to the Island Park Properties, "Wright's claim to a greater ownership interest [was] barred by the doctrine of claim preclusion[.]"

To succeed on a theory of claim preclusion, a party must show three elements—"(1) same parties; (2) same claim; and (3) final judgment." *Ticor Title Co.*, 144 Idaho at 124, 157 P.3d at 618. As was fatal to Parish's assertion of issue preclusion, the lack of a final judgment also precludes the application of claim preclusion. The district court treated the magistrate court's decision as a final judgment resolving the ownership interests in the Island Park Properties. However, the magistrate court's offer to resolve the ownership interest of the parties to the property

7

in question was nothing more than an unaccepted offer to resolve the dispute. The magistrate court explained that, absent a stipulation by the parties, the court could not issue a judgment to resolve the parties' respective ownership of the Island Park Properties. The parties never stipulated to the magistrate court's jurisdiction over that question and accordingly the magistrate court never issued a final judgment regarding the Island Park Properties. Therefore, the district court erred when it concluded that the magistrate court's discussion of the Island Park Properties in the divorce proceedings amounted to a final judgment, barring Wright's claim that he had a greater than fifty percent ownership interest in the Island Park Properties.[2]

3. *On remand, the district court must consider whether Wright can produce evidence to overcome the rebuttable presumption of equal ownership of the Island Park Properties.*

Because neither issue preclusion nor claim preclusion apply here, we now turn to the proper analysis regarding partition of the Island Park Properties and the parties' respective ownership interests because those issues will need to be resolved on remand. *See Urrutia v. Blaine County*, 134 Idaho 353, 359, 2 P.3d 738, 744 (2000) ("Where an appellate court reverses or vacates a judgment upon an issue properly raised, and remands for further proceedings, it may give guidance for other issues on remand.") (internal citation and quotation marks omitted). The district court issued its memorandum decision in this case on September 24, 2020, and the parties finished their briefing for this appeal on August 17, 2022. Neither the district court nor the parties had the benefit of our two recent decisions in *Nordgaarden v. Kiebert*, ___ Idaho ___, 527 P.3d 486 (2023), and *Demoney-Hendrickson v. Larsen*, ___ Idaho ___, 527 P.3d 520 (2023). Both cases are illuminating on the issue of partition.

In *Nordgaarden*, the question before this Court was what standard to employ when determining the physical partition of real property. ___ Idaho at ___, 527 P.3d at 489. Three siblings owned an undivided, one-third interest in a lakefront piece of real property that contained only one home. *Id.* at ___, 527 P.3d at 490. After the house had fallen into disrepair, one sibling sought judicial partition of the property, "assert[ing] that the property could be physically partitioned without great prejudice[,]" so partition by sale was unnecessary. *Id.* at ___, 527 P.3d at 491. The district court rejected that argument and concluded that partition by sale was necessary because physical partition would be too costly and there was no reasonable division of the property

---

[2] Because we conclude that Wright's current claim is not barred by claim preclusion due to the absence of a final judgment, we need not address the remaining elements of claim preclusion. *See Luce v. Marble*, 142 Idaho 264, 273, 127 P.3d 167, 176 (2005); *Ticor Title Co.*, 144 Idaho at 124, 157 P.3d at 618.

8

that would result in equal property values for the three siblings. *Id.* As a result, the parties would suffer great prejudice from physical partition of the property. *Id.* (Even though the property consisted of over three hundred feet of frontage on Lake Pend Oreille, physical partition was not feasible given the unique characteristics of the parcel. *Id.* at \_\_\_, 527 P.3d at 490.) This Court affirmed the district court's decision, concluding that a determination of great prejudice "must take into account the totality of the circumstances." *Id.* at \_\_\_, 527 P.3d at 492 (bold lettering and underlining removed). Next, this Court concluded that the district court's factual findings regarding "the totality of circumstances" were supported by substantial and competent evidence. *Id.* at \_\_\_, 527 P.3d at 495–99. For that reason, the district court did not err when it ordered the property to be partitioned by sale. *Id.* at \_\_\_, 527 P.3d at 498–99.

Shortly after we released our opinion in *Nordgaarden*, we considered the narrower question of the methodology of determining respective interests in property. In *Demoney-Hendrickson,* we concluded that a *rebuttable* presumption arises that ownership of tenants-in-common is equal "when an instrument is silent as to the parties' respective interests in property[.]" \_\_\_ Idaho at \_\_\_, 527 P.3d at 527. Accordingly, trial courts are obligated to "examine the totality of the circumstances to determine the respective ownership interests of the parties." *Id.* at \_\_\_, 527 P.3d at 528. In *Demoney-Hendrickson*, an unmarried couple acquired an interest in real property when one party conveyed his own separate property to both parties as individual grantees. *Id.* at \_\_\_, 527 P.3d at 522. In the subsequent partition action, the district court relied exclusively upon the language of the deed when it concluded that each party "owned an undivided, one-half interest in the . . . Property[.]" *Id.* at \_\_\_, 527 P.3d at 523.

On appeal, this Court reversed the district court's grant of summary judgment, concluding that the district court erred when it relied exclusively on the language of the deed in determining that each party owned an equal interest in the property. *Id.* at \_\_\_, 527 P.3d at 525. Instead, "[t]he presumption of equal shares may be rebutted with a showing, by a preponderance of the evidence, that the parties intended to share unequally in the property[,]" and the district court erred when it relied solely on the language of the deed. *Id.* at \_\_\_, 527 P.3d at 528. This Court concluded that "trial courts [should] consider the totality of the circumstances to determine whether the presumption of equal shares has been overcome by a preponderance of the evidence." *Id.* "The party opposing equal ownership bears this burden." *Id.*

9

The present case is analogous to *Demoney-Hendrickson*. Here, the district court erred when it failed to consider "the totality of the circumstances" before ruling in Parish's favor. The district court determined that the magistrate court's finding of fifty percent ownership had already been made. Further, the district court only considered the fact that there was a single house on the property when it concluded that the parties would be greatly prejudiced by partitioning the property in kind. It found the existence of a single house to be "sufficient[] [to] demonstrate[] the absence of a genuine issue of material fact on the question of prejudice if the Property is partitioned in kind." However, as we described in *Nordgaarden*, the question of prejudice must also be answered by reviewing "the totality of the circumstances." ___ Idaho at ___, 527 P.3d at 494.

Both Wright and Parish argued before the magistrate court how much of their separate funds had been used for the purchase of the Island Park Properties and the payment of the subsequent loans encumbering the Island Park Properties. However, neither party appears to have offered any evidence regarding their intended ownership interests of the Island Park Properties. The magistrate court did not find that either party had provided any evidence that the Island Park Properties had been conveyed "to the parties as married persons after the marriage[,]" yet it still concluded that "the parties apparently had the intent to jointly [equally] own the Island Park property." Wright argues that his separate property that secured the Home Equity Loan is evidence that the parties did not intend to equally own the property, yet the magistrate court's decision "contained zero discussion as to how these funds impacted the ownership interest of the parties[.]"

We agree with Wright. The magistrate court erred because it did not have the benefit of our decision in *Demoney-Hendrickson* in which we explained that the ownership classification of joint tenancy is merely a rebuttable presumption that may be overcome. ___ Idaho at ___, 527 P.3d at 527. In *Demoney-Hendrickson*, the district court "treated the dispute [regarding the parties' contributions] as one applicable to a contribution claim, rather than a determination of the parties' respective ownership interests." *Id.* at ___, 527 P.3d at 528. We clarified that questions of contribution and questions of ownership interest are distinct, and the district court erred when it conflated the two. *Id.* at ___, 527 P.3d at 528–29. We further concluded that summary judgment was improper when one party "produced evidence suggesting he contributed all sums for improving the . . . Property, [while he] admit[ted] he was unable to procure financing for the improvements . . . without a co-obligor on the construction loan." *Id.* at ___, 527 P.3d at 529.

Neither the magistrate court's nor the district court's decisions considered whether Wright or Parish intended for the Island Park Properties to be equally owned as tenants-in-common or whether they intended a different form of ownership—the decisions only considered the potential ownership interests considering the respective contributions of the parties. The magistrate court merely found that the parties owned the Island Park Properties "joint[ly.]" It did not make an explicit finding of fifty percent ownership. Instead, the magistrate court's decision used unclear language (appearing to be advisory in nature), explaining that "[e]ach party would *appear* to have a $60,000 interest" and "it *appears* that the real intent was too [sic] jointly own the Island Park [Properties.]" (Italics added.)

The magistrate court's decision added further confusion when it appeared to suggest an option for Wright to "buy out" Parish's interest in the Island Park Properties. First, the magistrate court ordered Parish to pay $20,826.25. Then, it said that if the parties preferred to include the Island Park Properties in the divorce action, then Wright *could* pay Parish $39,173.75 instead. It is hard to fathom what the magistrate court intended by suggesting that if Wright paid Parish $39,173.75, the Island Park Properties would then be considered part of the community's property. One way to interpret the magistrate court's suggestion is to conclude that Wright had contributed $20,826.25 more than Parish to the Island Park Properties. If that supposition is correct, in order to equalize the ownership of the parties, Parish's payment to Wright of $20,826.25 presumably would have given the parties an equal ownership in the Island Park Properties. Conversely, if Wright had paid Parish $39,173.75, he presumably would have owned the Island Park Properties free and clear; however, it is unclear what the magistrate court intended. The magistrate court never fully explained its reasoning, nor is it clear what was intended by suggesting the different alternatives. The district court erred when it concluded that this confusion was insufficient to present a genuine issue of material fact. Accordingly, we remand this issue to the district court to resolve in light of this Court's recent decisions in *Nordgaarden*, ___ Idaho ___, 527 P.3d 486, and *Demoney-Hendrickson*, ___ Idaho ___, 527 P.3d 520.

**B.      Neither party is entitled to attorney fees on appeal.**

Both Wright and Parish seek attorney fees on appeal. Each will be dealt with in turn.

Wright requests attorney fees on appeal based on Idaho Code section 6-545. Idaho Code section 6-545 authorizes an award of attorney fees in actions seeking a partition of real estate.

11

In *Nordgaarden*, we explained that section 6-545 permits recovery of the costs of partition, including reasonable attorney fees, incurred "for the common benefit[.]" ___ Idaho at ___, 527 P.3d at 500. However, if the attorney fees are incurred as part of an adversarial process, then attorney fees are not recoverable under the statute. *Id.*; *see also* I.C. § 6-545 ("When, however, litigation arises between some of the parties only, the court may require the expense of such litigation to be paid by the parties thereto, or any of them."). Accordingly, Wright is not entitled to attorney fees under Idaho Code section 6-545.

At the same time, we conclude that because Wright has prevailed in this action he is entitled to his costs. I.A.R. 40.

Parish also seeks attorney fees on appeal. Parish argues that she is entitled to attorney fees and costs under Idaho Code sections 6-545 and 12-121 because this is a partition action and because Wright's appeal was brought frivolously, unreasonably, and without foundation. For the same reasons why Wright is not entitled to recover attorney fees pursuant to Idaho Code section 6-545, neither is Parish. In order to recover attorney fees on appeal pursuant to Idaho Code section 12-121, the party seeking them must prevail. *See Easterling v. HAL Pac. Props., L.P.*, 171 Idaho 500, 520, 522 P.3d 1258, 1278 (2023). Parish has not prevailed. Consequently, we decline her request for attorney fees and costs.

## IV. CONCLUSION

The district court erred in granting summary judgment to Parish regarding Wright's attempt to assert a greater than fifty percent ownership interest in the Island Park Properties. We remand the case to the district court to consider whether Wright can produce evidence to overcome the rebuttable presumption of equal ownership of the Island Park Properties pursuant to our decisions in *Demoney-Hendrickson*, ___ Idaho at ___, 527 P.3d at 527, and *Nordgaarden*, ___ Idaho at ___, 527 P.3d at 494. We decline to award attorney fees to either party. Costs on appeal are awarded to Wright.

Chief Justice BEVAN, and Justices BRODY, MOELLER and ZAHN CONCUR.

12